Scott T. Nonaka (SBN 224770)
snonaka@sidley.com
Irene Yang (SBN 245464)
irene.yang@sidley.com
Naomi A. Igra (SBN 269095)
naomi.igra@sidley.com
Stephen Chang (SBN 312580)
stephen.chang@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Phone: (415) 772-1200
Fax: (415) 772-7400

Seferina Berch (*pro hac vice*)
sberch@sidley.com
Michael McGuinness (*pro hac vice*)
mmcguinness@sidley.com
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Phone: (212) 839-5300
Fax: (212) 839 5599

*Attorneys for Plaintiffs*

Jingni (Jenny) Zhao (SBN 284684)
jennyz@advancingjustice-alc.org
Glenn Michael Katon (SBN 281841)
glennk@advancingjustice-alc.org
Anoop Prasad (SBN 250681)
anoopp@advancingjustice-alc.org
ASIAN AMERICANS ADVANCING JUSTICE –
ASIAN LAW CAUCUS
55 Columbus Avenue
San Francisco, CA 94111
Phone: (415) 848-7710
Fax: (415) 896-1702

Judah Lakin (SBN 307740)
judah@lakinwille.com
Amalia Wille (SBN 293342)
amalia@lakinwille.com
LAKIN & WILLE LLP
1939 Harrison Street, Suite 420
Oakland, CA 94612
Phone: (510) 379-9216
Fax: (510) 379-9219

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO

| | |
|---|---|
| CENTRO LEGAL DE LA RAZA; IMMIGRANT LEGAL RESOURCE CENTER; TAHIRIH JUSTICE CENTER; REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES, <br><br> Plaintiffs, <br><br> v. <br><br> EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; JAMES MCHENRY, Director, Executive Office for Immigration Review; UNITED STATES DEPARTMENT OF JUSTICE; MONTY WILKINSON, Acting United States Attorney General, <br><br> Defendants. | Case No.  3:21-cv-00463-CRB <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR A PRELIMINARY INJUNCTION** <br><br> Date:    March 4, 2021 <br> Time:   10:00 a.m. <br> Courtroom:    6, 17th Floor <br><br> **JURY TRIAL DEMANDED** |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR COUNSEL: PLEASE TAKE NOTICE that at 10:00 a.m. on March 4, 2021, or as soon as the Court deems feasible and counsel may be heard, at the United States District Court for the Northern District of California, Courtroom 6, 17th Floor, 450 Golden Gate Avenue San Francisco, CA 94102, Plaintiffs Centro Legal de la Raza ("Centro Legal"), Immigrant Legal Resource Center ("ILRC"), Tahirih Justice Center ("Tahirih"), and Refugee and Immigrant Center for Education and Legal Services ("RAICES") (collectively "Plaintiffs") will, and hereby do, move for a preliminary injunction against Defendants Executive Office for Immigration Review ("EOIR"), James McHenry, Director of EOIR, United States Department of Justice ("DOJ"), and Monty Wilkinson, Acting U.S. Attorney General (collectively "Defendants"), pursuant to the Administrative Procedure Act, 5 U.S.C. § 553, and Rule 65 of the Federal Rules of Civil Procedure. In the alternative, Plaintiffs seek a stay of the effectiveness of the Rule pursuant to 5 U.S.C. § 705.

Plaintiffs seek a preliminary injunction prohibiting Defendants from enforcing the rule published in the Federal Register, *Appellate Procedure and Decisional Finality in Immigration Proceedings; Administrative Closure,* 85 Fed. Reg. 81,588 (Dec. 16, 2020) ("the Rule"). Plaintiffs respectfully ask this Court to stay or enjoin the Rule. Plaintiffs' Motion is based upon this Notice of Motion and Motion; the Memorandum of Points and Authorities; the supporting declarations and exhibits filed concurrently herewith; the Complaint (ECF 1); and such further evidence and argument as the Court may consider.

DATE:  January 22, 2021

/s/ *Naomi Igra*

Naomi A. Igra (SBN 269095)
naomi.igra@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Phone: (415) 772-1200
Fax: (415) 772-7400

*Attorney for Plaintiffs*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

SUMMARY OF THE ARGUMENT ................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES.............................................................. 1

I.              BACKGROUND ................................................................................................ 1

          A.              Immigration Court and the BIA .................................................... 1

          B.              The Rule ........................................................................................... 2

II.            LEGAL STANDARD ...................................................................................... 2

III.          ARGUMENT .................................................................................................... 3

          A.              Plaintiffs Are Likely to Succeed on The Merits of Their APA Claim ...... 3

                  1.     Defendants' Rulemaking Process Violated the APA............................ 3

                  2.     Director McHenry Lacked Authority to Issue the Rule ........................ 7

                  3.     The Rule is Arbitrary and Capricious..................................................... 8

          B.              The Rule Irreparably Harms Plaintiffs .................................... 14

          C.              The Remaining Factors Tip Sharply in Plaintiffs' Favor ...................... 15

1

## TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

*Matter of A-C-A-A-,*
5
    28 I. & N. Dec. 84 (A.G. 2020) ........................................................................................ 5, 14

6

*All. for the Wild Rockies v. Cottrell,*
    632 F.3d 1127 (9th Cir. 2011) ............................................................................................3
7

*Am. Fed'n of Labor v. Chertoff,*
8
    552 F. Supp. 2d 999 (N.D. Cal. 2007) ...............................................................................6

9

*Matter of Avetisyan,*
    25 I. & N. Dec. 688 (BIA 2012) ................................................................................ 11, 12
10

11

*Avila-Santoyo v. U.S. Atty. Gen.,*
    713 F.3d 1357 (11th Cir. 2013) .......................................................................................10
12

*Becerra v. U.S. Dep't of the Interior,*
13
    381 F. Supp. 3d 1153 (N.D. Cal. 2019) ...................................................................... 3, 10

14

*California v. Azar,*
    911 F.3d 558 (9th Cir. 2018) .............................................................................................4
15

*California v. Bureau of Land Mgmt.,*
16
    286 F. Supp. 3d 1054 (N.D. Cal. 2018) ........................................................................ 6, 9

17

*Casa de Md., Inc. v. Wolf,*
    2020 WL 5500165 (D. Md. Sept. 11, 2020) ............................................................... 4, 10
18

19

*Matter of Castro-Tum,*
    27 I. & N. Dec. 271 (BIA 2018) ......................................................................................11
20

*Catholic Legal Immigration Network, Inc. v. EOIR,*
21
    2021 WL 184359 (D.D.C. Jan. 18, 2021) ......................................................................13

22

*Chamber of Commerce of U.S. v. Whiting,*
    563 U.S. 582 (2011) ...........................................................................................................7
23

24

*Dada v. Mukasey,*
    554 U.S. 1 (2008) ...............................................................................................................8
25

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,*
26
    140 S. Ct. 1891 (2020) .....................................................................................................10

27

*East Bay Sanctuary Covenant v. Trump,*
    932 F.3d 742 (9th Cir. 2018) ("*EBSC I*") ........................................................................15
28

*East Bay Sanctuary Covenant v. Trump*,
   950 F.3d 1242 (9th Cir. 2020) ("*EBSC II*") ........................................................*passim*

*East Bay Sanctuary Covenant v. Barr*,
   964 F.3d 832 (9th Cir. 2020) ("*EBSC III*") ............................................................ 6, 15

*Encino Motorcars, LLC v. Navarro*,
   136 S. Ct. 2117 (2016) ........................................................................................10

*Guerrero-Lasprilla v. Barr*,
   140 S. Ct. 1062 (2020) ..........................................................................................9

*Hernandez-Serrano v. Barr*,
   981 F.3d 459 (6th Cir. 2020) ..............................................................................11

*Immigrant Legal Res. Ctr. v. Wolf*,
   2020 WL 5798269 (N.D. Cal. Sept. 29, 2020) .................................................. 5, 10

*INS v. St. Cyr*,
   533 U.S. 289 (2001) ...........................................................................................10

*Meza Morales v. Barr*,
   973 F.3d 656 (7th Cir. 2020) .......................................................................... 11, 12

*Michigan v. EPA*,
   576 U.S. 743 (2015) .............................................................................................9

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ("State Farm") ...........................................................9, 11, 14

*N.C. Fisheries Ass'n, Inc. v. Daley*,
   27 F. Supp. 2d 650 ............................................................................................ 6, 7

*N.S. v. Hughes*,
   Case No. 1:20-cv-101-RCL, 2020 WL 4260739 (D.D.C. July 24, 2020) ............................7

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*,
   545 U.S. 967 (2005) ...........................................................................................10

*Nat'l Immigr. Just. Ctr. v. Exec. Office for Immigr. Rev.*,
   No. 1:21-cv-00056-RBW (D.D.C. Jan. 13, 2021), ECF No. 10-1 ................................. 7, 8

*Oshodi v. Holder*,
   729 F.3d 883 (9th Cir. 2013) (en banc) ...............................................................1

*Pangea Legal Servs. v. U.S. Dep't of Homeland Sec.*,
   Case No. 20-CV-07721-SI, 2020 WL 6802474 (N.D. Cal. Nov. 19, 2020) ("*Pangea I*") .............. 3, 4

*Petry v. Block*,
   737 F.2d 1193 (D.C. Cir. 1984) ...........................................................................3

*Prometheus Radio Project v. FCC*,
   652 F.3d 431 (3d Cir. 2011) ................................................................................................3

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
   566 U.S. 639 (2012) ...........................................................................................................7

*Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric.*,
   415 F.3d 1078 (9th Cir. 2005) ............................................................................................6

*Romero v. Barr*,
   937 F.3d 282 (4th Cir. 2019) ....................................................................................... 11, 12

*SEC v. Chenery Corp.*,
   318 U.S. 80 (1943) .......................................................................................................... 7, 8

*Sessions v. Dimaya*,
   138 S. Ct. 1204 (2018) ........................................................................................................1

*U.S. Citrus Sci. Council v. U.S. Dep't of Agric.*,
   312 F. Supp. 3d 884 (E.D. Cal. 2018) .................................................................................6

*Matter of X-G-W-*,
   22 I. & N. Dec. 71 (BIA 1998) ...........................................................................................9

**Statutes**

5 U.S.C. § 500 *et seq.*, Administrative Procedure Act ("APA") .............................................*passim*

5 U.S.C. § 553(b)(2) ..............................................................................................................8

5 U.S.C. § 553(c) ............................................................................................................. 3, 8

5 U.S.C. § 601 *et seq.*, Regulatory Flexibility Act ("RFA") ............................................... 6, 7

5 U.S.C. § 604 .......................................................................................................................6

5 U.S.C. § 706(2)(A) .............................................................................................................8

5 U.S.C. § 706(2)(C) .............................................................................................................8

5 U.S.C. § 706(2)(D) .............................................................................................................3

6 U.S.C. § 521(a) ..................................................................................................................7

8 U.S.C. § 1101(a)(15) ..........................................................................................................1

8 U.S.C. § 1101(a)(47)(B) .....................................................................................................1

8 U.S.C. § 1103(g)(2) ...........................................................................................................7

8 U.S.C. § 1158(a)(1) ............................................................................................................1

8 U.S.C. § 1158(d)(4) ........................................................................................... 1

8 U.S.C. § 1182(a)(9)(B)(v) ................................................................................ 13

8 U.S.C. § 1229(b)(2) ...................................................................................... 1, 6

8 U.S.C. § 1229a(b)(1) ........................................................................................ 1

28 U.S.C. § 509 .................................................................................................. 7

28 U.S.C. § 510 .................................................................................................. 7

**Other Authorities**

8 C.F.R. § 212.7(e)(4)(iii) ................................................................................ 13

8 C.F.R. § 1003.0(b) ....................................................................................... 7, 8

58 Fed. Reg. 51,735-51,744 (Oct. 4, 1993) ...................................................... 3

64 Fed. Reg. 43,255-43,259 (Aug. 4, 1999) ..................................................... 6

76 Fed. Reg. 3,821-3,823 (Jan. 21, 2011) ........................................................ 3

81 Fed. Reg. 50,244-50,277 (July 29, 2016) .................................................. 13

85 Fed. Reg. 30,890-30,981 (May 21, 2020) .................................................... 3

85 Fed. Reg. 52,491-52,514 (Aug. 26, 2020) ............................................... 2, 8

85 Fed. Reg. 75,942-75,959 (Nov. 27, 2020) ("Motion to Reopen NPRM"). .... 4

85 Fed. Reg. 75,925-75,941 (Nov. 27, 2020) ("Continuance NPRM") ......... 4, 12

85 Fed. Reg. 80,274-80,401 (Dec. 11, 2020) ("Omnibus Asylum Rule") ......... 4

85 Fed. Reg. 81,588-81,656 (Dec. 16, 2020) ............................................. *passim*

85 Fed. Reg. 81,698-81,751 (Dec. 16, 2020) ("Asylum Procedures Rule") ... 4, 5

85 Fed. Reg. 82,260-82,290 (Dec. 17, 2020) ("Transit Ban Rule") ................. 4

85 Fed. Reg. 82,750-82,795 (Dec. 18, 2020) ("EOIR Fee Rule") ................... 4

Immigration and Nationality Act ("INA") .................................................. *passim*

Violence Against Women Act ("VAWA") .......................................................... 1

# SUMMARY OF THE ARGUMENT

The Rule challenged in this action strips away critical protections for noncitizens in immigration court and before the Board of Immigration Appeals ("BIA"). Because Plaintiffs meet the requirements for preliminary injunctive relief, the Rule should be enjoined or stayed.

Plaintiffs are likely to succeed on their claims that the Rule violates the Administrative Procedure Act ("APA"). First, Defendants failed to observe required procedures in issuing the Rule. The 30-day comment period during a pandemic denied the public a meaningful opportunity to comment. Defendants' piecemeal issuance of multiple related rules further hindered public comment, and Defendants also refused to assess the interplay of the rules. *Pangea Legal Servs. v. U.S. Dep't of Homeland Sec.*, Case No. 20-CV-07721-SI, 2020 WL 6802474, at *20-23 (N.D. Cal. Nov. 19, 2020) ("*Pangea I*"). Defendants also failed to comply with the Regulatory Flexibility Act ("RFA"). *Am. Fed'n of Labor v. Chertoff*, 552 F. Supp. 2d 999, 1013 (N.D. Cal. 2007).

Second, the Rule was impermissibly signed by the Director of the Executive Office for Immigration Review ("EOIR"). Under the Immigration and Nationality Act ("INA"), rulemaking authority rests with the Attorney General, and the Attorney General did not properly delegate to the Director the specific authority to promulgate regulations under the INA. *N.S. v. Hughes*, Case No. 1:20-cv-101-RCL, 2020 WL 4260739, at *5-6 (D.D.C. July 24, 2020).

Third, the Rule is arbitrary and capricious. The Rule's provisions work together to foreclose longstanding avenues for immigration relief. Defendants made these changes without adequately considering the harms to noncitizens and their advocates, and without the reasoned explanation required by the APA. *State Farm. Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("*State Farm*").

The Rule is irreparably harming Plaintiffs by forcing them to divert resources and making their representation of clients more burdensome, thus reducing the number of clients Plaintiffs can serve and frustrating their missions. The balance of equities and the public interest in ensuring compliance with the APA and preventing wrongful removals sharply favor Plaintiffs. *E. Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1280 (9th Cir. 2020) ("*EBSC II*").

## MEMORANDUM OF POINTS AND AUTHORITIES

This action challenges a rule that strips away procedural protections for noncitizens in immigration court and before the BIA, restricts the authority of immigration judges, and obstructs critical forms of relief for people at risk of deportation. *Appellate Procedure and Decisional Finality in Immigration Proceedings; Administrative Closure*, 85 Fed. Reg. 81,588 (Dec. 16, 2020) ("the Rule"). Because the Rule violates the APA, irreparably harms Plaintiffs, and is contrary to public interest, it should be stayed or enjoined.

## I.    BACKGROUND

### A.    Immigration Court and the BIA

The INA establishes a path through the immigration courts and the BIA for noncitizens to establish claims for relief and present defenses to removal from the United States. Defenses to removal include some forms of humanitarian relief adjudicated by U.S. Citizenship and Immigration Services ("USCIS") rather than by immigration judges. *See, e.g.*, 8 U.S.C. § 1158(a)(1) (asylum); § 1101(a)(15)(T), (U) (T or U visas for survivors of human trafficking or certain crimes, respectively); § 1154 (petitions for survivors of abuse under the Violence Against Women Act); Compl. ¶ 29 (Jan. 19, 2021), ECF No. 1.

Because removal is a "particularly severe penalty" it can be imposed only after a "full and fair hearing." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1213 (2018) (citation omitted); *Oshodi v. Holder*, 729 F.3d 883, 889 (9th Cir. 2013) (en banc). Accordingly, the INA affords noncitizens the right to present evidence and the right to counsel of their choosing. 8 U.S.C. § 1229a(b)(1); Compl. ¶¶ 24-36. It also requires the Attorney General to provide a list of organizations that offer pro bono representation. 8 U.S.C. §§ 1229(b)(2); 1158(d)(4). A removal order only becomes final after a determination by the BIA. 8 U.S.C. § 1101(a)(47)(B).

Before the Rule went into effect, numerous procedural mechanisms provided an opportunity for noncitizens to be heard before removal. For decades, immigration judges used administrative closure to temporarily take a removal case off of their dockets, often to enable a person to pursue relief before USCIS. Compl. ¶¶ 37-39. Administrative closure conserves judicial resources where a noncitizen is likely to be granted relief by USCIS. *Id.* ¶ 40. It also prevents noncitizens entitled to relief under the INA from being deported simply because of delays in USCIS processing. *Id.* ¶ 41.

1

1   *Sua sponte* reopening and reconsideration of a removal order is another longstanding procedural

2   tool to prevent wrongful deportations. Regulations promulgated in the 1950s gave the BIA authority to

3   reopen or reconsider a case at any time. *Id.* ¶ 58. Time and number limits (one motion to reconsider

4   filed within 30 days and one motion to reopen filed within 90 days of a removal order, with few

5   exceptions) were introduced in 1996, but immigration judges and the BIA retained authority to reopen

6   or reconsider *sua sponte* outside of those limits. *Id.* ¶ 60. Before the Rule took effect, BIA precedent

7   permitted *sua sponte* reopening or reconsideration in exceptional situations, such as where a fundamental

8   change in law materially impacts a person's case. *Id.* ¶ 178.

9       Before the Rule took effect, briefing in nondetained matters at the BIA was consecutive, and

10  parties could request extensions of up to 90 days for their opening briefs. Extensions are often necessary

11  because the parties have no way of knowing when the BIA will issue a briefing schedule, and experience

12  delays because the EOIR has a paper-based system and sends materials by regular mail. *Id.* ¶¶ 44-54,

13  199. A noncitizen has only 21 days after the schedule issues to submit an opening brief, which the BIA

14  must receive by the deadline. *Id.* ¶¶ 46-49. Because the BIA mails the transcript and immigration judge's

15  order at the same time it mails the briefing schedule, preparing a brief in advance is not feasible,

16  particularly for newly retained counsel. *Id.* ¶ 207.

17      **B.      The Rule**

18      Defendants issued a Notice of Proposed Rulemaking on August 26, 2020. 85 Fed. Reg. 52,491

19  (Aug. 26, 2020). Then-Attorney General William Barr signed the Proposed Rule and provided a 30-day

20  comment period. Among many changes to longstanding immigration court and BIA practices, the

21  Proposed Rule: (1) eliminated *sua sponte* motions to reopen or reconsider cases, except for typographical

22  errors or defective service; (2) generally prohibited administrative closure; and (3) truncated BIA

23  briefing, including instituting simultaneous briefing and shortening possible extensions from 90 to 14

24  days. Compl. ¶¶ 88-91, 196. Numerous other proposed rules affecting the same population were

25  proposed around the same time. Compl. ¶¶ 79–83. The final Rule was almost the same as the Proposed

26  Rule but was signed by EOIR Director McHenry. 85 Fed. Reg. at 81,656.

27  **II.    LEGAL STANDARD**

28      A court will issue a preliminary injunction if Plaintiffs establish (1) likelihood of success on the

merits (2) irreparable harm, (3) equities that tip in their favor, and that (4) an injunction is in the public interest. *E. Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1271 (9th Cir. 2020) ("*EBSC II*"). "Serious questions going to the merits" can also support an injunction if "the balance of hardships tips sharply" in Plaintiffs' favor. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (internal quotation marks and citations omitted).

## III.   ARGUMENT

### A.   Plaintiffs Are Likely to Succeed on The Merits of Their APA Claim

#### 1.   Defendants' Rulemaking Process Violated the APA

##### (a) Defendants Denied The Public A Meaningful Opportunity to Comment

Defendants' rulemaking process violated the APA because it denied the public a meaningful opportunity to comment. 5 U.S.C. §§ 553(c); 706(2)(D). Even in ordinary times, 30 days would have been insufficient for comments given the complexity of the scheme the Rule alters and its wide-ranging implications.[1] As Defendants acknowledged, the Rule is "significant regulatory action," 85 Fed. Reg. at 81,643, that must be "consistent with the principles" of Executive Orders noting "a comment period [] should generally be at least 60 days." Exec. Order 13563, 76 Fed. Reg. 3,821, 3,822 (Jan. 21, 2011); *accord* Exec. Order 12866, 58 Fed. Reg. 51,735, 51,740 (Oct. 4, 1993). Here, the Rule was also proposed in the midst of a pandemic.[2] Other parts of the federal government acknowledged the challenges of conducting business during the pandemic,[3] but Defendants did not.

The Rule was also part of a "staggered" rulemaking process "in which [DOJ and DHS] published this NPRM and several other related proposed rules." *Pangea Legal Servs. v. U.S. Dept. of Homeland Sec.*, 2020 WL 6802474, at *22 (N.D. Cal. Nov. 19, 2020) ("*Pangea I*"); Compl. ¶¶ 114-124. The

---

[1] *Petry v. Block*, 737 F.2d 1193, 1201 (D.C. Cir. 1984) ("The Administrative Conference itself thus suggests a sixty-day period as 'a more reasonable *minimum* time for comment.'" (citation omitted); *Becerra v. U.S. Dep't of the Interior*, 381 F. Supp. 3d 1153, 1176-77 (N.D. Cal. 2019) (observing that 60 or "90 days is the 'usual' amount of time allotted for a comment period") (quoting *Prometheus Radio Project v. FCC*, 652 F.3d 431, 453 (3d Cir. 2011)).

[2] Decl. of Naomi A. Igra ("Igra Decl.") Ex. 1 (ILRC Comment) at 2.

[3] *See, e.g.*, *Debt Collection Practices (Regulation F); Extension of Comment Period*, 85 Fed. Reg. 30,890 (May 21, 2020) (agreeing that "the pandemic makes it difficult to respond to the SNPRM thoroughly" and providing an additional 90 days to comment on a proposal "in light of the challenges posed by the COVID-19 pandemic"); https://www.supremecourt.gov/orders/courtorders/031920zr_d1o3.pdf (extending the deadline to file any petition for writ of certiorari to 150 days).

relentless rulemaking overwhelmed affected parties, including Plaintiffs.[4] For example, Plaintiff Immigrant Legal Resource Center ("ILRC") made the difficult decision not to comment on administrative closure because it did not have the resources to cover all the topics at issue in the short timeframe. ILRC Decl. ¶ 24. Plaintiff Centro Legal could not submit a comment at all. Centro Decl. ¶ 14. The staggered rulemaking also deprived the public of a full opportunity to assess and comment on the Rule combined with other changes,[5] including this Rule's interaction with at least four others:[6]

- **EOIR Fee Rule**: This rule increases the fee from $110 to $975 for BIA appeals, and from $110 to $895 for BIA motions to reopen or reconsider. 85 Fed. Reg. at 82,750. Defendants acknowledge the EOIR Fee Rule but refused to consider its implications because they believed it could be enjoined. See 85 Fed. Reg. at 81,594.

- **Omnibus Asylum Rule**: This rule curtails the discretion of an immigration judge or the BIA to consider motions to reopen even based on changed country conditions, yet the Rule at issue in this case rests on the availability of such motions to justify limiting other procedural remedies. *See, e.g.*, 85 Fed. Reg. at 81,629, 81,632, 81,634.

- **Asylum Procedures Rule**: Under this asylum rule, proposed just two days before the comment period for this Rule closed, immigration judges will deem people who fail to file asylum applications within 15 days to have waived the opportunity to submit an application. 85 Fed. Reg. at 81,699. For noncitizens who miss the 15-day deadline, the availability of sua sponte reopening by an immigration judge is critical to prevent miscarriages of justice.

- **Continuance NPRM**: This rule was proposed after the comment period for this Rule closed; it would further restrict continuances in immigration court, even though the Rule at issue in this case relies on the availability of continuances to justify eliminating administrative closure. *See, e.g.*, 85 Fed. Reg. at 81,598 n.24, 81,647.

---

[4] Decl. of Priya Arvind Patel ("Centro Decl.") ¶¶ 13-14; Decl. of Erin Quinn ("ILRC Decl.") ¶¶ 21-26; Decl. of Adilene Nunez Huang ("Tahirih Decl.") ¶¶ 15-17; Decl. of Michelle Garza ("RAICES Decl.") ¶¶ 11-19 .

[5] *See Casa de Md., Inc. v. Wolf*, 2020 WL 5500165, at *26 (D. Md. Sept. 11, 2020) (preliminarily enjoining DHS-issued rule under APA in part because DHS staggered rulemaking, precluding the public from considering the cumulative impact of the rules); *California v. Azar*, 911 F.3d 558, 580 (9th Cir. 2018) (opportunities to comment on other rules do not constitute a meaningful opportunity to comment on the rule at issue); *Pangea I*, 2020 WL 6802474, at *22 (observing plaintiffs at least raised "serious questions" about whether 30 days was sufficient in light of staggered rulemaking).

[6] *Procedure for Asylum and Withholding of Removal; Credible Fear and Reasonable Fear Review*, 85 Fed. Reg. 80,274 (Dec. 11, 2020) ("Omnibus Asylum Rule"); *Procedures for Asylum and Withholding of Removal*, 85 Fed. Reg. 81,698 (Dec. 16, 2020) ("Asylum Procedures Rule"); *Fee Review*, 85 Fed. Reg. 82,750 (Dec. 18, 2020) ("EOIR Fee Rule"); *Good Cause for a Continuance in Immigration Proceedings,* 85 Fed. Reg. 75,925 (Nov. 27, 2020) ("Continuance NPRM"). Defendants also failed to consider *Asylum Eligibility and Procedural Modifications*, 85 Fed. Reg. 82,260 (Dec. 17, 2020) ("Transit Ban Rule") and *Motion to Reopen and Reconsider; Effect of Departure; Stay of Removal*, 85 Fed. Reg. 75,942 (Nov. 27, 2020) ("Motion to Reopen NPRM").

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION, CASE NO. 3:21-CV-00463-CRB

1   Moreover, Defendants "fail[ure] to consider the combined impact" of these rules with the Rule at issue

2   in this case, renders this Rule arbitrary and capricious. *Immigrant Legal Res. Ctr. v. Wolf*, 2020

3   WL 5798269, at *14 (N.D. Cal. Sept. 29, 2020).

4          Against this backdrop, Defendants' decision to allow only 30 days for comment violated the

5   APA. Many commenters explained why 30 days was not enough time for comments.[7] Defendants'

6   responses are baseless. For example, Defendants asserted that "commenters did not suggest or indicate

7   what additional issues the comment period precluded them from addressing." 85 Fed. Reg. at 81,642.

8   This is patently false; commenters identified issues they would have addressed given more time,

9   including the Rule's interaction with the Asylum Procedures Rule[8] and the effect of *Matter of A-C-A-A-*,

10  28 I. & N. Dec. 84 (A.G. 2020), issued right before the close of the comment period.[9]

11         Defendants also attempted to justify the short comment period by reference to a 2002

12  rulemaking that allowed 30 days to comment on changes to certain BIA procedures. *See* 85 Fed. Reg. at

13  81,642 & n.72 (citing 67 Fed. Reg. 54,877, 54,879 (Aug. 26, 2002)). That outlier from nearly twenty years

14  ago does not explain Defendants' decision as to this Rule, nor does it take into account the challenges of

15  staggered rulemaking and a global pandemic. Defendants also contend that any comparison to other

16  proposed rules with longer comment periods is "inapposite" because this proposed rule "addressed a

17  small, discrete set of procedures which are already well-established." *Id.* But it is precisely because the

18  Rule changes a "well-established" set of intersecting procedures that it has far-reaching effects. The

19  public needed more time to comment because the Rule dismantles a system relied on for decades.

20         Finally, Defendants claimed that allowing a 60-day comment period in light of COVID-19,

21  "would effectively preclude rulemaking by the Department for the duration of the COVID-19

22  outbreak." 85 Fed. Reg. at 81,643. But providing a 60- or 90-day comment would not "preclud[e]

23  rulemaking"; at most, it might extend the process by a month or two. Here, Defendants did not identify

24  any urgent need to issue the Rule that could justify their failure to allow adequate time to comment. For

25  these reasons, the 30-day comment period not only denied the public a meaningful opportunity to

---

26  Igra Decl. Ex. 2 (AILA Comment) at 2–3; Ex. 3 (Tahirih Comment) at 7; Ex. 4 (Pangea Comment) at 2–3; Ex. 5 (IJN Comment) at 15.

27  [8] *See, e.g.,* Igra Decl. Ex. 2 (AILA Comment) at 2-3; Ex. 6 (Reichlin-Melnick Comment) at n.5, at 2-4; Ex. 7 (CGRS Comment) at 4; Ex. 4 (Pangea Comment) at 1–2.

28  [9] Igra Decl. Ex. 4 (Pangea Comment) at 3; Ex. 6 (Reichlin-Melnick Comment) at 2–3.

1   comment but was also arbitrary and capricious.

2   *(b) Defendants Disregarded the RFA*

3         Defendants disregarded their obligations under the Regulatory Flexibility Act ("RFA") and failed

4   to seriously consider the problem the Rule creates for small legal service providers.[10] The RFA requires

5   agencies to conduct a "regulatory flexibility analysis" to assess how rules will affect "small entities," and

6   to publish a final version of that analysis. 5 U.S.C. § 604. Defendants sidestepped that requirement,

7   claiming that the Rule has no adverse impact on small entities because it "does not limit the fees

8   [practitioners] may charge, or the number of cases a representative may ethically accept under the rules

9   of professional responsibility." 85 Fed. Reg. at 81,645. That response denies reality. The RFA analysis is

10  about "the practical effect ... of the rule, not its formal characteristics."[11] Numerous commenters alerted

11  Defendants of the Rule's burden on nonprofit legal service providers and how it would limit the number

12  of people they could serve.[12] And numerous cases have held that rules such as this one irreparably harm

13  small legal service providers.[13] Defendants cannot feign ignorance because the INA requires EOIR to

14  provide lists of pro bono legal service providers, 8 U.S.C. § 1229(b)(2). Those lists include small entities

15  such as Centro Legal. Centro Decl. ¶ 10. Defendants' refusal to acknowledge the Rule's impact on small

16  entities renders the Rule without observance of procedures required by law and also arbitrary and

17  capricious. *See, e.g., Am. Fed'n of Labor*, 552 F. Supp. 2d at 1013 (finding "serious questions whether DHS

18  violated the RFA by refusing to conduct a final flexibility analysis").[14]

19

20  [10] Defendants also ignored their federalism certification obligations under Executive Order No. 13132
    § 1(a), 64 Fed. Reg. 43,255 (Aug. 4, 1999). Defendants neither completed this certification nor offered

21  an adequate response to comments that addressed harms to local government. Igra Decl. Ex. 8
    (LADCBA Comment) at 1, 7 (describing how the Rule undercuts local policies, and 30-day comment

22  period was insufficient to consider "federalism concerns and the potential impacts to municipalities").
    [11] *Am. Fed'n of Labor v. Chertoff*, 552 F. Supp. 2d 999, 1013 (N.D. Cal. 2007); *U.S. Citrus Sci. Council v. U.S.*

23  *Dep't of Agric.*, 312 F. Supp. 3d 884, 912 (E.D. Cal. 2018) ("[T]he Ninth Circuit [has] implicitly assumed
    that indirectly affected small entities had standing to challenge an agency decision under the RFA.")

24  (citing *Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric.*, 415 F.3d 1078,
    1101 (9th Cir. 2005)).

25  [12] Igra Decl. Ex. 9 (CLINIC Comment) at 30-31; Ex. 10 (NILC Comment) at 10-11; Ex. 2 (AILA
    Comment) at 14; Ex. 11 (Make the Road New York Comment) at 9; and Ex. 4 (Pangea Comment) at 11,

26  14; Ex. 12 (DSCS Comment) at 8, 11; Ex. 13 (LAS Comment) at 15-16.
    [13] *See, e.g., East Bay Sanctuary Covenant v. Barr*, 964 F.3d 832, 854 (9th Cir. 2020) ("*EBSC III*"); *EBSC II*,

27  950 F.3d at 1280.
    [14] *California v. Bureau of Land Mgmt.*, 286 F. Supp. 3d 1054, 1072 (N.D. Cal. 2018) (finding Bureau of Land

28  Management's explanation for insignificant costs insufficient under RFA); *N.C. Fisheries Ass'n, Inc. v.*

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION, CASE NO. 3:21-CV-00463-CRB

### 2.    Director McHenry Lacked Authority to Issue the Rule

The Rule also violates the APA because Director McHenry lacked authority to issue the Rule. The INA rests rulemaking authority with the Attorney General, 8 U.S.C. § 1103(g)(2), and specifically grants the Attorney General sole rulemaking authority over EOIR. *See* 6 U.S.C. § 521(a). Existing regulations do not delegate rulemaking authority to the EOIR Director. *See* 8 C.F.R. § 1003.0(b). But in the final Rule, Defendants asserted that Attorney General Order 4910-2020 delegated that authority to the EOIR Director. *See* 85 Fed. Reg. at 81,650; *see also Nat'l Immigr. Just. Ctr. v. Exec. Office for Immigr. Rev.*, No. 1:21-cv-00056-RBW (D.D.C. Jan. 13, 2021) ("the Order"), ECF No. 10-1. That assertion is wrong.

The Order purportedly delegates "the authority to issue regulations related to immigration matters within the jurisdiction of the EOIR" to the Director "[p]ursuant to the authority vested in the Attorney General by law, including 28 U.S.C. §§ 509 and 510." *Id.* But Sections 509 and 510 are general delegation provisions that do not provide the Attorney General with the specific authority to delegate rulemaking authority under the INA; instead, that authority derives solely from 8 U.S.C. § 1103(g)(2). *See N.S. v. Hughes*, 2020 WL 4260739, at *5 (D.D.C. July 24, 2020). Specific authority is required because the INA is a "comprehensive federal regulatory scheme for regulation of immigration and naturalization," *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 587 (2011) (citation omitted), and the Attorney General's power to delegate rulemaking authority pursuant to §§ 509 and 510 "does not apply where Congress has specifically and separately allocated enforcement authority over a certain action or set of actions." *N.S.*, 2020 WL 4260739, at *5; *see also RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) ("[W]here general and specific authorizations exist side-by-side, the general/specific canon avoids rendering superfluous a specific provision that is swallowed by the general one.").

The Order does not mention 8 U.S.C. § 1103(g)(2). Because Defendants may only defend the delegation on the grounds specifically provided in the Order, *see SEC v. Chenery Corp.*, 318 U.S. 80, 95 (1943), they cannot now defend the delegation under § 1103(g)(2). Indeed, a D.C. District Court recently invalidated an identically-worded order that purported to delegate authority pursuant to §§ 509 and 510. *See N.S.*, 2020 WL 4260739, at *5–6. After finding that the Attorney General could only delegate

---

*Daley*, 27 F. Supp. 2d 650, 659 (finding that the Secretary of Commerce fisheries quota adjustment to be "utterly lacking in compliance with the requirements of the RFA").

rulemaking authority under § 1103(g), the court invalidated the order under *Chenery*. *See id.*. The same logic applies here. And because the Attorney General did not properly delegate specific authority to Director McHenry, the Rule was issued "in excess of statutory jurisdiction, authority, or limitations," 5 U.S.C. § 706(2)(C), and not in accordance with law, *id.* § 706(2)(A).

This unlawful delegation also violated the APA because the Proposed Rule did not give the public an opportunity to comment on the Director's lack of authority to issue the Rule. *See* 5 U.S.C. § 553(c). The Proposed Rule did not disclose that the Director would sign the Rule. *See* 85 Fed. Reg. 52,491 (Aug. 26, 2020). Nor could commenters have been aware of this fact. The Rule's comment period ended on September 25, 2020, *see id.* at 52,491, but the Order was not signed until November 14, 2020.[15] By failing to mention the unlawful delegation of rulemaking authority to the EOIR Director, the Proposed Rule failed to provide notice of the Rule's legal basis. *See* 5 U.S.C. § 553(b)(2); *Pangea I*, 2020 WL 6802474, at *22 (finding that DHS violated the APA by failing to clearly delineate the legal basis for the Department's authority to issue the rule). This lack of notice also prevented interested parties from commenting on the impropriety of allowing the Director to delegate sweeping authority *to himself* beyond that provided by law. *See* 8 C.F.R. § 1103.0(b); Compl. ¶¶ 90, 273-286; Tahirih Decl. at ¶ 20. The EOIR Director's issuance of the Rule violated the APA in this way too.

### 3.     The Rule is Arbitrary and Capricious

The Rule as a whole is unlawful because its provisions work together to practically foreclose well-established avenues for relief under the INA without a rational explanation. A 15-page motion cannot explain how all the intersecting provisions effect this unlawful result, but Plaintiffs offer a few examples to illustrate that the Rule as a whole is arbitrary and capricious.

(a)     *Sua Sponte* Motions to Reopen: For longer than the BIA has existed, noncitizens have been able to seek reopening of a removal order at any time to prevent miscarriages of justice. *See Dada v. Mukasey*, 554 U.S. 1, 12-13 (2008) (describing early history of motions to reopen). Against this backdrop, Defendants' elimination of *sua sponte* motions to reopen was arbitrary and capricious.

---

[15] The Order was effective through January 20, 2021, the final day of the Trump Administration.

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION, CASE NO. 3:21-CV-00463-CRB

1    *First*, Defendants "failed to consider" the problem that the Rule blocks relief for some

2    noncitizens no matter how compelling their claims and equities. [16] *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v.*

3    *State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("*State Farm*"). Defendants refused to acknowledge

4    that "alternatives" they cite, 85 Fed. Reg. at 81,633, 81,629, such as equitable tolling and joint motions to

5    reopen, are simply unavailable to many noncitizens.[17] Defendants' failure to acknowledge that the Rule

6    forecloses reopening for some noncitizens, much less weigh that fact against any competing

7    considerations, is arbitrary and capricious. *Michigan v. EPA*, 576 U.S. 743, 753 (2015) (agencies must

8    "pay[] attention to the advantages *and* the disadvantages" of their rules) (emphasis in original).

9    *Second*, Defendants did not "examine the relevant data and articulate a satisfactory explanation

10   for [their] action." *State Farm*, 463 U.S. at 43. Defendants claim a lack of standards has resulted in

11   "potential for inconsistent application or even abuse." 85 Fed. Reg. at 81,628. They do not explain how

12   such a long-standing practice suddenly became abusive. Indeed, in *Matter of X-G-W-*, 22 I. & N. Dec. 71,

13   74 (BIA 1998), the BIA expressly invited noncitizens to file motions seeking *sua sponte* reopening or

14   reconsideration. And a report cited in the Rule shows that the aggregate number of motions to reopen

15   and reconsider filed with the immigration courts and the BIA declined slightly from 2008 to 2020.[18]

16   *Third,* Defendants' contention that eliminating *sua sponte* reopening promotes "efficient

17   adjudication" and "finality" is baseless and contrary to the evidence. *See*, *e.g.*, 85 Fed. Reg. at 81,629.

18   *California v. Bureau of Land Mgmt.*, 286 F. Supp. 3d at 1066 (rejecting agency justification that "fail[ed] to

19   point to any factual support underlying its concern"). If anything, the elimination of *sua sponte* reopening

20   will be inefficient because noncitizens who would have sought *sua sponte* reopening will now be forced to

21   make equitable tolling arguments instead. These arguments require more complex factual and legal

22   determinations and are subject to federal court review. *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1068

23   (2020); *see Pangea I*, 2020 WL 6802474, at *16 (rejecting "adjudicative efficiency" rationale where aspects

24   of rule would require agency to make more complex determinations). The Rule also undermines finality

25   by exempting DHS from time and number limits on motions filed with the BIA. 85 Fed. Reg. at 81,591.

---

[16] Igra Decl. Ex. 14 (RoundTable Comment) at 14; Ex. 1 (ILRC Comment) at 7; Ex. 15 (GBLS Comment) at 3-5.
[17] Igra Decl. Ex. 16 (CLSEPA Comment) at 11; Ex. 17 (SCCPD Comment) at 2-3.
[18] 85 Fed. Reg. at 81,612 (citing EOIR, *Adjudication Statistics: Motions* (Oct. 13, 2020), https://tinyurl.com/y457sxrt).

1    *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2126 (2016) ("'Unexplained inconsistency' [is] 'a

2    reason for holding an interpretation to be an arbitrary and capricious change from agency practice.'")

3    (quoting *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005)).

4            *Fourth*, Defendants departed from longstanding practice without satisfying their obligation to

5    "assess whether there were reliance interests, determine whether they were significant, and weigh any

6    such interests against competing policy concerns." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140

7    S. Ct. 1891, 1915 (2020). When time and number limits on motions to reopen were imposed in 1996, the

8    agency declined to include a "good cause" exception because "*sua sponte* authority to reopen removal

9    proceedings accomplished the same goal." *Avila-Santoyo v. U.S. Atty. Gen.*, 713 F.3d 1357, 1363 (11th Cir.

10   2013). People with removal orders who have invested time and resources pursuing post-conviction relief

11   or visa petitions have relied on the availability of *sua sponte* reopening. So have organizations such as

12   Plaintiff ILRC.[19] Commenters suggested that rather than eliminating *sua sponte* authority altogether, the

13   agency should define "exceptional circumstances" to address its concern about a lack of standards. 85

14   Fed. Reg. at 81,632. The agency's conclusory response that "further elaboration" of the "exceptional

15   circumstances" standard would not address the concern, *id.* at 81,633, "is legally insufficient."[20]

16           *Fifth*, the Rule applies the withdrawal of *sua sponte* reopening authority to "all cases, regardless of

17   posture, on the effective date." 85 Fed. Reg. at 81,588. Those who filed *sua sponte* motions prior to the

18   effective date in reliance on BIA precedent will have their motions summarily denied. And they will be

19   unable to file new motions with alternative arguments because those motions will be time- or number-

20   barred. The Rule is thus impermissibly retroactive and disregards noncitizens' reasonable expectations.

21   *Cf. INS v. St. Cyr*, 533 U.S. 289, 321 (2001) (explaining when statute may be impermissibly retroactive).

22           (b)      <u>Administrative Closure</u>: For decades, immigration judges and the BIA have used

23   administrative closure to defer cases while individuals to pursue relief made available to them by statute.

24

25   [19] *See* ILRC Decl. ¶ 32-37; *see also id.* Ex. 17 (SCCPD Comment) at 2 (describing county's investment in
     hiring immigration staff to pursue motions to reopen based on post-conviction relief); *see Immigrant Legal
     Res. Ctr.*, 2020 WL 5798269, at *15-16 (enjoining rule where agency failed to assess reliance interests of
26   plaintiff organizations that structured service models around prior rule).
     [20] *Becerra*, 381 F. Supp. 3d at 1169 (holding agency action arbitrary and capricious where it failed to
27   adequately consider alternatives to repealing rule in its entirety); *Casa de Maryland*, 2020 WL 5500165, at
     *25-26 (agency improperly failed to consider extending processing timeframe for work permit
28   applications rather than eliminating timeframe altogether).

The Rule effectively eliminates this authority without a rational explanation. 85 Fed. Reg. at 81,597-602. In particular, Defendants failed to consider an "important aspect of the problem." *State Farm,* 463 U.S. at 43, because they did not meaningfully address how eliminating administrative closure will lead to the deportation of noncitizens who have meritorious claims for relief. *See Meza Morales v. Barr*, 973 F.3d 656, 665 (7th Cir. 2020).[21] When combined with the elimination of motions to remand for new evidence and *sua sponte* motions to reopen, elimination of administrative closure will make it impossible for many people to pursue relief that Congress made available by statute.[22]

Defendants' justifications for eliminating administrative closure do not withstand scrutiny.[23] They contend that administrative closure decreases efficiency of the immigration courts, conflicts with the immigration courts' duty to resolve cases in a timely fashion, and conflicts with other regulations. 85 Fed. Reg. at 81,598–99. But as numerous commenters, the BIA, EOIR consultants, and federal courts have explained, administrative closure *improves* efficiency and facilitates timely resolution of cases. For example, the BIA noted that administrative closure facilitates "efficient management of the resources" of the immigration courts by allowing immigration judges and the BIA to manage their dockets. *Matter of Avetisyan*, 25 I. & N. Dec. 688, 695 (BIA 2012). An EOIR-commissioned Booz Allen Hamilton study recommended working with DHS "to administratively close cases awaiting adjudication in other agencies or courts" as a way to improve EOIR's processes.[24] Immigration judges have similarly emphasized that administrative closure promotes "[e]fficient and fair management of a docket" because

[21] *See* Igra Decl. Ex. 3 (Tahirih Comment) at 8-9; *see also id.* Ex. 18 (Minneapolis Comment) at 1-2 (noting that deportation can be a death sentence); Ex. 10 (NNEDV Comment) at 3-4 (describing the horrific and life-threatening situations survivors of domestic violence face upon deportation).
[22] Igra Decl. Ex. 9 (CLINIC Comment) at 28-29. In fact, in response to comments concerning data showing that noncitizens who obtain administrative closure have obtained lawful status, the Rule concluded that such data was "ultimately of little relevance to the rule." 85 Fed. Reg. at 81,648.
[23] Defendants attempt to suggest that the elimination of administration closure is not a break from past practice because the Attorney General's 2018 decision in *Matter of Castro-Tum*, 27 I. & N. Dec. 271 (BIA 2018), concluded that neither immigration judges nor the BIA have authority to administratively close cases. 85 Fed. Reg. at 81,598. But that decision was itself contrary to longstanding EOIR practice, has now been rejected twice by courts of appeals. *See Meza Morales*, 973 F.3d at 664–67; *Romero v. Barr*, 937 F.3d 282, 287–97 (4th Cir. 2019). *But see Hernandez-Serrano v. Barr*, 981 F.3d 459, 464 (6th Cir. 2020); *see also id.* at 467, 471 (Clay, J., dissenting) (noting that the Sixth Circuit now comes into conflict with the two other circuits that found such authority to exist under federal regulation).
[24] *See also* EOIR, *Legal Case Study Summary Report*, Booz Allen Hamilton at 26 (Apr. 6, 2017), https://bit.ly/35td6yo ("Booz Allen Report"). The Rule does not explain how the EOIR Director will be able to adjudicate cases more swiftly than the BIA without jeopardizing fairness.

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION, CASE NO. 3:21-CV-00463-CRB

1    it "allows for cases to be held in abeyance, without unnecessary use of court time and resources, when

2    preliminary matters need to be completed for the case to become ripe for further adjudication."[25] Like

3    holding a case in abeyance in federal court, administrative closure "permits the immigration judge to

4    attend to and resolve cases that are ready for resolution and allows immigration judges to complete

5    more cases."[26] Far from promoting efficiency, eliminating administrative closure "would in fact serve to

6    lengthen and delay" many proceedings. *Romero*, 937 F.3d at 297; *Avetisyan*, 25 I. & N. Dec. at 689–90.

7            In the face of all this, Defendants imply that administrative closure was the cause of backlogs

8    after *Matter of Avetisyan* in 2012. 85 Fed. Reg. at 81,599. But correlation is not causation.[27] And numerous

9    other factors account for the immigration court backlog, such as a historic rise in asylum seekers arriving

10   at the border, a years-long EOIR hiring freeze that reduced the number of immigration judges, and

11   changes in DHS's enforcement practices.[28]

12           Defendants also asserted that administrative closure is inconsistent with other regulations. 85

13   Fed. Reg. at 81,599. But both the Fourth Circuit and Seventh Circuit disagree. *See Romero*, 937 F.3d at

14   292; *accord Meza Morales*, 973 F.3d at 665.[29] In any event, an obvious alternative is to clarify or amend the

15   regulations. Defendants were required to consider such alternatives in light of the significant reliance

16   interests at stake. Countless individuals now before EOIR are pursuing relief before USCIS or state

17   courts while their proceedings are administratively closed.[30] Defendants suggest that people can request

18   continuances instead of administrative closure, 85 Fed. Reg. at 81,598 n.24,[31] but that suggestion ignores

19   the burden and inefficiency of continuances. Plaintiffs, individuals in removal proceedings, DHS, and

---

20   [25] Igra Decl. Ex. 20 (NAIJ Letter) at 1; Ex. 14 (RoundTable Comment) at 12-14; Ex. 21 (NAIJ
     Comment) at 2-4.
21   [26] Igra Decl. Ex. 20 (NAIJ Letter) at 2.
     [27] Igra Decl. Ex. 22 (RAICES Comment) at 2 (noting that "correlation is not causation"). Data actually
22   shows that administrative closure has helped reduce the backlog. Igra Decl. Ex. 23 (AILC Comment) at
     2; Ex. 24 (TRAC, *Report: The Life and Death of Administrative Closure* (Sept. 10, 2020),
23   https://tinyurl.com/y2u2kn8f) at 1.
     [28] *See, e.g.,* Igra Decl. Ex. 6 (Reichlin-Melnick Comment) at 7–8.
24   [29] The Sixth Circuit has created a circuit split on the issue. *See supra* notes 3, 34.
     [30] The Rule suggests that reliance interests are not a concern because the Rule applies only prospectively,
25   85 Fed. Reg. at 81,601, but either EOIR or DHS could re-calendar all cases that are currently
     administratively closed. People in the Fourth and Seventh Circuit could no longer pursue administrative
26   closure despite recent judicial decisions sanctioning this longstanding procedural tool.
     [31] The Rule's reliance on continuances is also disingenuous because on January 8, 2021, Defendant
27   McHenry issued a memo restricting access to continuances and Defendants have also proposed a rule
     that would restrict continuances. *See* Exec. Office for Immigr. Review, Director James McHenry,
28   Continuances, (Jan. 8, 2021); *see also* 85 Fed. Reg. 75,925 (Nov. 27, 2020).

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION, CASE NO. 3:21-CV-00463-CRB

immigration judges will be required to substantiate or evaluate the showing required for every continuance and waste resources with unnecessary court appearances. Moreover, as restrictions on continuances become increasingly severe, the parties must be prepared to address all issues when a continuance is denied. *See Pangea I*, 2020 WL 6802474, at *16 (describing efficiency justification that "rings hollow" in context).

Defendants also failed to consider the effect of the Rule on the availability of hardship waivers of unlawful presence. 8 U.S.C. § 1182(a)(9)(B)(v). EOIR considered the link between waivers and administrative closure "too attenuated." 85 Fed. Reg. at 81,644. But as even EOIR acknowledged, *id.* at 81,601, 81,644, people in removal proceedings can obtain the waiver of unlawful presence only if their removal proceedings are administratively closed. *See* 8 C.F.R. § 212.7(e)(4)(iii). Defendants' response that individuals could take voluntary departure and then seek a provisional waiver before DHS, 85 Fed. Reg. at 81,644, conflicts with other DHS regulations. *See* 81 Fed. Reg. 50,244, 50,256 (July 29, 2016) ("[I]ndividuals granted voluntary departure will not be eligible for provisional waivers."). Because Defendants did not adequately consider the interplay of the Rule with other regulations, the Rule is arbitrary and capricious in this respect too.

(c)     Briefing Schedule: The Rule arbitrarily truncates the appellate briefing schedule. 85 Fed. Reg. at 81,654; Compl. ¶¶ 196-212. The Rule purports to impose these changes to expedite appeals but the Rule does not impact the time appeals remain pending at BIA; it only makes it more difficult for noncitizens to mount appeals and obtain effective representation. Defendants responded to this serious problem by accusing commenters of "gamesmanship,"[32] 85 Fed. Reg. at 81,637, even though briefing extensions, reply briefs, and consecutive briefing are ordinary features of appellate process. Defendants ignored that "the legal services providers offered ample basis for the truth of their positions: their extensive knowledge and experience with the immigration system." *Catholic Legal Immigration Network, Inc. v. EOIR*, 2021 WL 184359, at *12 (D.D.C. Jan. 18, 2021). Defendants also failed to explain why their change to longstanding practice is warranted even though the Rule makes it more difficult for

---

[32] For example, Defendants leap to the conclusion that extensions are merely a "delay tactic" because they are often requested close to a deadline. 85 Fed. Reg. at 81,637. But such extensions only reflect the insufficient time for BIA briefing even before the Rule. Centro Decl. ¶¶ 17-22.

1    practitioners to bring appeals, and will reduce the rate of representation at the BIA.[33] And they did not

2    seriously weigh alternative solutions that would enhance efficiency, such as e-filing.[34]

3         The Rule's changes to the briefing schedule also have no connection to the facts. *State Farm*, 463

4    U.S. at 43. Delays in BIA adjudication are not attributable to the time the parties are briefing.[35] Parties

5    sometimes wait more than a year to receive the transcript and briefing schedule that triggers the briefing

6    deadlines,[36] and then wait more than a year after briefing is complete to receive decisions. RAICES Decl.

7    ¶ 38. Defendants also largely ignored that the Rule will require the BIA to expend resources determining

8    whether requests for briefing extensions are supported by good cause instead of granting timely requests

9    for 21 day extensions as was BIA policy before the Rule.[37]

10        Finally, Defendants failed to consider the interplay of the Rule with other recent changes. For

11   example, a new Attorney General decision requires the BIA to examine substantive issues on all

12   statutory elements de novo, even where the parties stipulated to elements below. *Matter of A-C-A-A-*, 28

13   I. & N. Dec. 84. As a result, appellate briefs will have to not only challenge errors below, but also

14   anticipate responses and disprove any other reasoning the BIA could offer. This increases the burden of

15   briefing, which must now be completed on the Rule's abbreviated schedule.

16        **B.    The Rule Irreparably Harms Plaintiffs**

17        Plaintiffs are suffering irreparable harm because they have been forced to "divert resources away

18   from [their] core programs to address the new policy." *EBSC II*, 950 F.3d at 1280.[38] Unless the Rule is

19   enjoined, Plaintiffs will be forced to devote even greater resources to completely revising educational

20

21   [33] 85 Fed. Reg. at 81,636-37; Igra Decl. Ex. 25 (NIJC Comment) at 5-8; *Id.* Ex. 26 (APBCO Comment) at 3-5; RAICES Decl. ¶¶ 32, 36-37; ILRC Decl. ¶ 41. Reduction in the rate of representation will also result in inefficiency. RAICES Decl. ¶¶ 18, 42.

22   [34] Booz Allen Report, *supra* n. 22, at 26. *See also* Tahirih Decl. ¶ 21.

23   [35] Igra Decl. Ex. 14 (RoundTable) at 2-5. The Rule asserted that briefs are not filed in the majority of BIA appeals, undercutting any suggestion that briefing delays are the cause of backlogs or that the Rule

24   will increase efficiency. 85 Fed. Reg. at 81,638. In any event, that BIA briefs are not filed in all cases does not minimize the impact of the Rule on legal services providers, like Plaintiffs, who file such briefs.

25   [36] RAICES Decl. ¶¶ 25, 38. There are significant practical problems with trying to prepare a BIA brief before receipt of the transcript and immigration judge's order, which the BIA sends by mail *at the same*

26   *time* as the briefing schedule. *Compare* 85 Fed. Reg. at 81,637, *with* RAICES Decl. ¶¶ 21–30; *see also* Tahirih Decl. ¶ 41; Centro Decl. ¶¶ 17-18.

27   [37] 85 Fed. Reg. at 81,636 (describing concern); *see Pangea I*, 2020 WL 6802474, at *16 (describing efficiency justification that "rings hollow" in context).

28   [38] ILRC Decl. ¶¶ 29-30, 35; RAICES Decl. ¶¶ 9, 19, 75; Tahirih Decl. ¶¶ 13, 32-33 36; Centro Decl. ¶ 11.

14

1   materials,[39] and conducting new trainings. The Rule also requires Plaintiffs to expend significantly more

2   resources on cases,[40] and causes "ongoing harms to [their] organizational missions," *EBSC III*, 964 F.3d

3   at 854 (citation omitted). In particular, the Rule makes it much more difficult for Plaintiffs to take BIA

4   appeals for people they did not represent in immigration court, and also makes referring matters to pro

5   bono attorneys more difficult and costly.[41] For Plaintiffs that mentor attorneys, the Rule will increase

6   the number of requests for technical assistance and the complexity of their responses.[42] The Rule will

7   thus make Plaintiffs' programs far more resource intensive. Because the need for pro bono legal

8   immigration services outpaces supply, the Rule will mean that more noncitizens will be unrepresented

9   and less likely to obtain the relief for which they are eligible.[43] The cumulative effect is that Plaintiffs will

10  be able to "provid[e] fewer services to fewer individuals," *id.*, which frustrates their missions.[44]

11  ## C.    The Remaining Factors Tip Sharply in Plaintiffs' Favor

12          The equities and the public interest favor universal injunctive relief. *See East Bay Sanctuary*

13  *Covenant v.* Trump, 932 F.3d 742, 779 (9th Cir. 2018) ("*EBSC I*"). "Relevant equitable factors include the

14  value of complying with the APA, the public interest in preventing the deaths and wrongful removal of

15  asylum-seekers, preserving congressional intent, and promoting the efficient administration of our

16  immigration laws . . . ." *EBSC II*, 950 F.3d at 1280. These interests tip sharply in Plaintiffs' favor. The

17  public has an interest in ensuring that noncitizens, particularly those seeking humanitarian relief, are not

18  wrongfully removed, including to countries where they are likely to face substantial harm. *Id.* at 1281.

19  The public also has an interest in preventing family separation and harm to cities and communities.[45]

20  Moreover, the Rule undermines substantial investments that cities and states have made in immigrant

21  legal service programs.[46] Finally, an unfair immigration court system that dramatically disadvantages

22  noncitizens is contrary to the INA's purpose and undermines public trust in government.[47]

23  [39] ILRC Decl. ¶¶ 27–29; Centro Decl. ¶ 12.
    [40] Centro Decl. ¶¶ 16, 31; Tahirih Decl. ¶¶ 28, 45; RAICES Decl. ¶¶ 45-46.
24  [41] Tahirih Decl. ¶¶ 40-46, 48; RAICES Decl. ¶¶ 29-37; Centro Decl. ¶¶ 16-22.
    [42] ILRC Decl. at ¶ 25; RAICES Decl. ¶¶ 13-14; Tahirih Decl. ¶ 35.
25  [43] RAICES Decl. ¶¶ 17–18.
    [44] RAICES Decl. ¶¶ 4, 9, 19, 44, 70, 75; Tahirih Decl. ¶¶ 5, 13, 26-27; Centro Decl. ¶ 11, 26, 32; ILRC
26  Decl. ¶¶ 25, 42, 48.
    [45] Igra Decl. Ex. 8 (LADCBA Comment) at 2-4.
27  [46] Igra Decl. Ex. 27 (NYC Comment) at 3-5; Ex. 17 (SCCPD Comment) at 1-2; Ex. 8 (LADCBA
    Comment) at 1, 3-5; ILRC Decl. ¶¶ 11, 27, 29-31.
28  [47] Igra Decl. Ex. 27 (NYC Comment) at 5-7.

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION, CASE NO. 3:21-CV-00463-CRB

1

2

Respectfully submitted,

3

DATE:  January 22, 2021                         /s/ Naomi Igra

4

Jingni (Jenny) Zhao (SBN 284684)         Scott T. Nonaka (SBN 224770)
5       jennyz@advancingjustice-alc.org             snonaka@sidley.com
Glenn Michael Katon (SBN 281841)         Irene Yang (SBN 245464)
6       glennk@advancingjustice-alc.org             irene.yang@sidley.com
Anoop Prasad (SBN 250681)                Naomi A. Igra (SBN 269095)
7       anoopp@advancingjustice-alc.org             naomi.igra@sidley.com
ASIAN AMERICANS ADVANCING JUSTICE        Stephen Chang (SBN 312580)
8       – ASIAN LAW CAUCUS                          stephen.chang@sidley.com
55 Columbus Avenue                       SIDLEY AUSTIN LLP
9       San Francisco, CA 94111                     555 California Street, Suite 2000
Phone: (415) 848-7710                    San Francisco, CA 94104
10      Fax: (415) 896-1702                         Phone: (415) 772-1200
Fax: (415) 772-7400
11      Judah Lakin (SBN 307740)
judah@lakinwille.com                     Seferina Berch (*pro hac vice*)
12      Amalia Wille (SBN 293342)                   sberch@sidley.com
amalia@lakinwille.com                    Michael McGuinness (*pro hac vice*)
13      LAKIN & WILLE LLP                           mmcguinness@sidley.com
1939 Harrison Street, Suite 420          SIDLEY AUSTIN LLP
14      Oakland, CA 94612                           787 Seventh Avenue
Phone: (510) 379-9216                    New York, NY 10019
15      Fax: (510) 379-9219                         Phone: (212) 839-5300
Fax: (212) 839 5599
16
*Attorneys for Plaintiffs*
17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION, CASE NO. 3:21-CV-00463-CRB