| | |
|---|---|
| Scott T. Nonaka (SBN 224770) | Jingni (Jenny) Zhao (SBN 284684) |
| snonaka@sidley.com | jennyz@advancingjustice-alc.org |
| Irene Yang (SBN 245464) | Glenn Michael Katon (SBN 281841) |
| irene.yang@sidley.com | glennk@advancingjustice-alc.org |
| Naomi A. Igra (SBN 269095) | Anoop Prasad (SBN 250681) |
| naomi.igra@sidley.com | anoopp@advancingjustice-alc.org |
| Stephen Chang (SBN 312580) | ASIAN AMERICANS ADVANCING JUSTICE – |
| stephen.chang@sidley.com | ASIAN LAW CAUCUS |
| SIDLEY AUSTIN LLP | 55 Columbus Avenue |
| 555 California Street, Suite 2000 | San Francisco, CA 94111 |
| San Francisco, CA 94104 | Phone: (415) 848-7710 |
| Phone: (415) 772-1200 | Fax: (415) 896-1702 |
| Fax: (415) 772-7400 | |

Seferina Berch (*pro hac vice*)
sberch@sidley.com
Michael McGuinness (*pro hac vice*)
mmcguinness@sidley.com
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Phone: (212) 839-5300
Fax: (212) 839 5599

Judah Lakin (SBN 307740)
judah@lakinwille.com
Amalia Wille (SBN 293342)
amalia@lakinwille.com
LAKIN & WILLE LLP
1939 Harrison Street, Suite 420
Oakland, CA 94612
Phone: (510) 379-9216
Fax: (510) 379-9219

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO

| | |
|---|---|
| CENTRO LEGAL DE LA RAZA; IMMIGRANT LEGAL RESOURCE CENTER; TAHIRIH JUSTICE CENTER; REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES, <br><br> Plaintiffs, <br><br> v. <br><br> EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; JEAN KING, Acting Director, Executive Office for Immigration Review; UNITED STATES DEPARTMENT OF JUSTICE; MONTY WILKINSON, Acting United States Attorney General, <br><br> Defendants. | Case No. 3:21-cv-00463-SI <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION** <br><br> Date: March 9, 2021 <br> Time: 10:30 a.m. <br> Courtroom: via Zoom |

## **TABLE OF CONTENTS**

I.   This Court Has Jurisdiction Over Plaintiffs' APA Claims ................................................... 1

II.  Plaintiffs Have Established That an Injunction Is Warranted ............................................. 2

     A.   Defendants Mischaracterize the Injunction Plaintiffs Seek .................................... 2

     B.   Plaintiffs' Showing on the Merits Warrants an Injunction ..................................... 4

          1.   Defendants' Rulemaking Process Violated the APA ................................... 4

          2.   Mr. McHenry Did Not Have Authority to Promulgate the Final Rule .................. 6

     C.   Provisions of the Rule Illustrate That It Is Arbitrary and Capricious .................................. 8

III. Plaintiffs Have Established Irreparable Harm and That the Equities Tip in Their Favor ............ 14

IV.  The Scope of Relief Plaintiffs Request is Warranted ........................................................ 15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Matter of A-C-A-A-,*
  28 I. & N. Dec. 84 (A.G. 2020)................................................................................................14

*United States ex rel. Accardi v. Shaughnessy,*
  347 U.S. 260 (1954) ..........................................................................................................12

*Aeronautical Repair Station Ass'n, Inc. v. F.A.A.,*
  494 F.3d 161 (D.C. Cir. 2007) ..............................................................................................6

*Aggarao v. MOL Ship Mgmt. Co.,*
  675 F.3d 355 (4th Cir. 2012)..................................................................................................3

*Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't Homeland Sec.,*
  510 F.3d 1 (1st Cir. 2007)........................................................................................................1

*Al Otro Lado v. Wolf,*
  Case No. 17-cv-02366-BAS-KSC, 2020 WL 6384357 (S.D. Cal. Oct. 30, 2020) ............................3

*Arizona Dream Act Coal. v. Brewer,*
  757 F.3d 1053 (9th Cir. 2014)................................................................................................3

*Matter of Avetisyan,*
  25 I & N Dec. 688 (BIA 2012)..............................................................................................11

*Bay Area Addiction Rsch. & Treatment, Inc. v. City of Antioch,*
  179 F.3d 725 (9th Cir. 1999)..................................................................................................3

*Calderon v. Sessions,*
  330 F. Supp. 3d 944 (S.D.N.Y. 2018).....................................................................................12

*Casa de Md., Inc. v. Wolf,*
  Civil Action No. 8:20-cv-02118-PX, 2020 WL 5500165..........................................................5

*Catholic Legal Immigr. Network, Inc. v. Exec. Off. for Immigr. Rev.,*
  Case No. 20-cv-03812 (APM), 2021 WL 184359 (D.D.C. Jan. 18, 2021) ............................1, 2, 14

*Cement Kiln Recycling Coal. v. E.P.A.,*
  255 F.3d 855 (D.C. Cir. 2001) ..............................................................................................6

*Chambers of Comm. of U.S. v. Whiting,*
  563 U.S. 583 (2011)................................................................................................................7

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,*
  140 S. Ct. 1891 (2020)................................................................................................1, 8, 9, 10

*E. Bay Sanctuary Covenant v. Trump,*
   932 F.3d 742 (9th Cir. 2018).............................................................................................15

*E. Bay Sanctuary Covenant v. Trump,*
   950 F.3d 1242 (9th Cir. 2020)..................................................................................2, 14, 15

*Elkins v. Moreno,*
   435 U.S. 647 (1978)............................................................................................................7

*Epic Sys. Corp. v. Lewis,*
   138 S. Ct. 1612 (2018)....................................................................................................6, 7

*Faison v. Jones,*
   440 F. Supp. 3d 1123 (E.D. Cal. 2020) ............................................................................3

*Matter of G-N-C-,*
   22 I&N Dec. 281 (BIA 1998) ..........................................................................................11

*Garcia v. Google, Inc.*
   , 786 F.3d 733 (9th Cir. 2015) .......................................................................................3, 4

*GoTo.com, Inc. v. Walt Disney Co.,*
   202 F.3d 1199 (9th Cir. 2000)...........................................................................................3

*Heckler v. Lopez,*
   463 U.S. 1328 (1983) ........................................................................................................4

*Hernandez v. Sessions,*
   872 F.3d 976 (9th Cir. 2017)............................................................................................4

*Immigrant Legal Res. Ctr. v. Wolf,*
   Case No. 20-cv-05883-JSW, 2020 WL 5798269 (N.D. Ca. Sept. 29, 2020) ...................5

*Immigr. & Nat'l Servs. v. St. Cyr,*
   533 U.S. 289 (2001)........................................................................................................10

*J.E.F.M. v. Lynch,*
   837 F.3d 1026 (9th Cir. 2016)......................................................................................1, 2

*Jennings v. Rodriguez,*
   138 S. Ct. 830 (2018) ........................................................................................................2

*Landgraf v. USI Film Prods.,*
   511 U.S. 244 (1994)........................................................................................................10

*Las Americas Immigrant Advocacy Ctr. v. Trump,*
   475 F. Supp. 3d 1194 (D. Or. 2020) ................................................................................2

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,*
   571 F.3d 873 (9th Cir. 2009) .........................................................................................3, 4

*Martinez v. Napolitano,*
   704 F.3d 620 (9th Cir. 2012)................................................................................................2

*Morton v. Mancari,*
   417 U.S. 535 (1974)....................................................................................................... 6, 7

*N.S. v. Hughes,*
   Case No. 1:20-CV-101, 2020 WL 4260739 (D.D.C. July 24, 2020)..................................7

*Nat'l Immigr. Project of Nat'l Lawyers Guild v. Exec. Off. of Immigr. Rev.,*
   456 F. Supp. 3d 16 (D.D.C. 2020)....................................................................................2

*O.A. v. Trump,*
   404 F. Supp. 3d 109 (D.D.C. 2019)..................................................................................2

*Pangea Legal Servs. v. U.S. Dep't of Homeland Sec.,*
   No. 20-CV-07721-SI, 2020 WL 6802474 (N.D. Cal. Nov. 19, 2020) ......................... 5, 15

*Portland Cement Ass'n v. E.P.A.,*
   665 F.3d 177 (D.C. Cir. 2011) ..........................................................................................6

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank,*
   566 U.S. 639 (2012)..........................................................................................................7

*Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.,*
   908 F.3d 476 (9th Cir. 2018) .............................................................................................8

*Matter of Renata Miranda-Cordiero,*
   27 I. & N. Dec. 551 (BIA 2019)........................................................................................8

*SEC v. Chenery Corp.,*
   318 U.S. 80 (1943)............................................................................................................7

*SEC v. Chenery Corp.,*
   332 U.S. 194 (1947)..........................................................................................................8

*Swinomish Indian Tribal Cmty. v. BNSF Ry. Co.,*
   951 F.3d 1142 (9th Cir. 2020)....................................................................................... 6, 7

*United Farm Workers v. Perdue,*
   No. 1:20-cv-01452-DAD-JLT, 2020 WL 6318432 (E.D.Cal. Oct. 28, 2020) ...................4

*United States v. Giordano,*
   416 U.S. 505 (1974)..........................................................................................................7

*In re Vasquez-Muniz,*
   23 I. & N. Dec. 207 (BIA 2002)........................................................................................8

*Matter of W-Y-U-,*
   27 I & N Dec. 17 (BIA 2017)..........................................................................................11

*Matter of X-G-W-*,
    22 I. & N. Dec. 71 (BIA 1998) ..................................................................................8

*Zirkle Fruit Co. v. U.S. Dep't of Labor*,
    No. 1:19-cv-03180-SMJ, 2019 WL 7819802 (E.D. Wash. Sept. 11, 2019) .......................................3

**Statutes**

6 U.S.C. § 521 ....................................................................................................7

8 U.S.C.§ 1103(g) ..............................................................................................7

8 U.S.C. § 1103(g)(1) ....................................................................................7, 8

8 U.S.C. § 1103(g)(2) .........................................................................................6

8 U.S.C. § 1229a(c)(7)(A) ..................................................................................9

8 U.S.C. § 1252(b)(4)(A) ....................................................................................2

8 U.S.C. § 1252(b)(9) .....................................................................................1, 2

28 U.S.C. § 509 ..................................................................................................7

28 U.S.C. § 510 ...............................................................................................6, 7

**Other Authorities**

8 C.F.R. § 212.7(e) ............................................................................................12

8 C.F.R. § 212.7(e)(3) ........................................................................................12

78 Fed. Reg. 536 (Jan. 3, 2013) .......................................................................12

81 Fed. Reg. 50,244 (July 29, 2016) ................................................................12

85 Fed. Reg. 52,491 (Aug. 26, 2020) .................................................................8

85 Fed. Reg. 81,588 (Dec. 16, 2020) ..........................................................*passim*

Plaintiffs' Motion ("Mot." (Jan. 22, 2021), ECF No. 24) established that the rule entitled, *Appellate Procedures and Decisional Finality in Immigration Proceedings; Administrative Closure*, 85 Fed. Reg. 81,588 (Dec. 16, 2020) (the "Rule"), should be enjoined. Because Defendants' Opposition ("Opp." (Feb. 5, 2021), ECF No. 47), does not overcome Plaintiffs' showing or rebut the additional arguments *amici* offered, the Court should grant Plaintiffs' Motion.

## I.     This Court Has Jurisdiction Over Plaintiffs' APA Claims

Defendants contend that this Court lacks jurisdiction to hear Plaintiffs' claims. Opp. 3-4. That contention is untenable because Plaintiffs' claims "aris[e] from" Defendants' rulemaking process, not from "any action taken or proceeding brought to remove a[] [noncitizen] from the United States." 8 U.S.C. § 1252(b)(9).

Section 1252(b)(9) channels "policies-and-practices challenges" that arise from individuals' removal proceedings into petitions for review in the courts of appeals. *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1035 (9th Cir. 2016). But 8 U.S.C. §1252(b)(9) does not apply to claims like Plaintiffs' "that are independent of or collateral to" removal proceedings. *Id.* at 1031-32 (internal quotation marks and citation omitted); *see also Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1907 (2020) ("*Regents*") (explaining 8 U.S.C. § 1252(b)(9) is a "targeted" and "narrow" provision that is "certainly not a bar where . . . the parties are not challenging any removal proceedings."). In *J.E.F.M.*, the claims subject to 8 U.S.C. § 1252(b)(9) were right-to-counsel claims that "arose because . . . children were in removal proceedings, during which they lacked counsel," *Catholic Legal Immigr. Network, Inc. v. Exec. Off. for Immigr. Rev.*, Case No. 20-cv-03812 (APM), 2021 WL 184359, at *8 (D.D.C. Jan. 18, 2021) ("*CLINIC*"). In contrast, the claims here arose not because of any individuals' removal proceeding but because of Defendants' conduct in promulgating the Rule. *Id.* (rejecting government's 8 U.S.C. § 1252(b)(9) argument in APA challenge to EOIR rule raising fees in removal proceedings); *see also Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't Homeland Sec.*, 510 F.3d 1, 10 (1st Cir. 2007) (holding 8 U.S.C. § 1252(b)(9) barred right-to-counsel claims but could not "be read to swallow all claims that might somehow touch upon, or be traced to, the government's efforts to remove" a noncitizen). In particular, Plaintiffs "challenge whether the agency used reasoned decisionmaking," gave the public sufficient opportunity to comment, and properly delegated rulemaking authority to the EOIR Director. *CLINIC*,

1    2021 WL 184359, at *8. "[C]ramming judicial review" of these APA questions into petitions for review

2    "would be absurd." *Jennings v. Rodriguez*, 138 S. Ct. 830, 840 (2018).[1]

3            Indeed, Defendants' interpretation of 8 U.S.C. § 1252(b)(9) would make Plaintiffs' claims

4    "effectively unreviewable." *Jennings*, 138 S. Ct. at 840. That is because a petition for review of a removal

5    order is based "only on the administrative record" from an individual's removal proceeding. 8 U.S.C. §

6    1252(b)(4)(A). But this case is based on the agency's administrative record from the rulemaking process.

7    "Without *that* record, which § 1252(b)(4)(A) precludes the courts of appeals from considering, it is

8    difficult to fathom how meaningful judicial review of [plaintiffs' APA claims] could occur." *O.A. v.*

9    *Trump*, 404 F. Supp. 3d 109, 134 (D.D.C. 2019).[2] As *J.E.F.M.* noted, 8 U.S.C. § 1252(b)(9) was not

10   intended "to foreclose *all* judicial review of agency actions." 837 F.3d at 1031. In that case, the court

11   found that children's right-to-counsel claims could be litigated through petitions for review. *Id.* at 1035-

12   38. Not so for APA challenges to the rulemaking process. If the Court were to credit Defendants'

13   interpretation of 8 U.S.C. § 1252(b)(9), all rulemaking related to removal proceedings would be insulated

14   from review and effectively exempted from the APA. "[N]o sensible person could have intended" that

15   outcome. *Jennings*, 138 S. Ct. at 840 (citation omitted) (rejecting an "expansive interpretation of 8 U.S.C.

16   § 1252(b)(9)" and noting the Court has "eschewed 'uncritical literalism'" as to "capacious phrases like

17   'arising from'"). The Court should therefore assert jurisdiction over Plaintiffs' claims.

18   **II.    Plaintiffs Have Established That an Injunction Is Warranted**

19           **A.    Defendants Mischaracterize the Injunction Plaintiffs Seek**

20           Defendants assert that Plaintiffs are seeking a "mandatory injunction" because an order granting

21   Plaintiffs' Motion would require the agency "return to a prior state of operation." Opp. 3. That assertion

---

22   [1] Plaintiffs' APA challenge "does not undermine Congress's desire to 'limit all [noncitizens] to one bite

23   of the apple'" in challenging removal because Plaintiffs do not ask this Court to review any removal
     orders. *E. Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1269 (9th Cir. 2020) ("*EBSC III*") (quoting

24   *Martinez v. Napolitano*, 704 F.3d 620, 622 (9th Cir. 2012) (holding 8 U.S.C. § 1252(b)(9) did not bar
     challenge to asylum procedures)); *see also Las Americas Immigrant Advocacy Ctr. v. Trump*, 475 F. Supp. 3d

25   1194, 1209 (D. Or. 2020) ("Allowing organizational plaintiffs to bring claims alleging systemic problems,
     independent of any removal orders, . . . does not thwart the purpose of § 1252(b)(9).").

26   [2] *CLINIC*, 2021 WL 184359, at *7 (adopting *O.A.*'s holding that 8 U.S.C. § 1252(b)(9) does not bar
     challenge to "the validity of a regulation of general applicability based on the administrative record

27   generated in rulemaking") (citations and quotations omitted); *see also Nat'l Immigr. Project of Nat'l Lawyers
     Guild v. Exec. Off. of Immigr. Rev.*, 456 F. Supp. 3d 16, 29 (D.D.C. 2020) (finding 8 U.S.C. § 1252(b)(9)

28   likely barred claims based on "access-to-counsel and due process injuries" but expressly recognizing
     *O.A.*'s "exception to this bar" for challenges to rulemaking).

1    reflects a fundamental misunderstanding of the distinction between mandatory and prohibitory

2    injunctions, and "severely mischaracterize this concept" of the *status quo. GoTo.com, Inc. v. Walt Disney Co.*,

3    202 F.3d 1199, 1210 (9th Cir. 2000).

4              "A mandatory injunction orders a responsible party to take action, while a prohibitory injunction

5    prohibits a party from taking action and preserves the status quo pending a determination of the

6    merits." *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1060-61 (9th Cir. 2014) (internal quotations

7    and citations omitted). Preserving the *status quo* does not mean maintaining "any situation before the

8    filing of a lawsuit," but instead means returning the parties to "the last uncontested status which

9    preceded the pending controversy." *GoTo.com,* 202 F.3d at 1210 (citation and internal quotation marks

10   omitted); *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 378 (4th Cir. 2012) ("The status quo to be

11   preserved by a preliminary injunction, however, is not the circumstances existing at the moment the

12   lawsuit or injunction request was actually filed, but the 'last uncontested status between the parties

13   which preceded the controversy.'") (citation omitted). Here, Plaintiffs "seek to preserve the status quo

14   that existed before Defendant[s] began [their] allegedly unlawful conduct." *Faison v. Jones,* 440 F. Supp.

15   3d 1123, 1131 (E.D. Cal. 2020) (citing *GoTo.com*, 202 F.3d at 1210). "Actions required to reinstate the

16   *status quo ante litem* do not convert prohibitive orders into mandatory relief." *Al Otro Lado v. Wolf,* Case

17   No. 17-cv-02366-BAS-KSC, 2020 WL 6384357, at *6 (S.D. Cal. Oct. 30, 2020).

18             Ninth Circuit law is clear that an injunction to "prohibit enforcement of a new law or policy, . . .

19   is prohibitory." *Arizona Dream Act Coal.*, 757 F.3d at 1061 (internal quotations and citations omitted);

20   *Zirkle Fruit Co. v. U.S. Dep't of Labor*, No. 1:19-cv-03180-SMJ, 2019 WL 7819802, at *4 (E.D. Wash. Sept.

21   11, 2019) (rejecting the argument that an order requiring an agency to "revert[] back" to a prior policy

22   constituted a mandatory injunction); *Bay Area Addiction Rsch. & Treatment, Inc. v. City of Antioch*, 179 F.3d

23   725, 728, 732 n.13 (9th Cir. 1999) (injunction against enforcement of a local ordinance that likely

24   violated federal law was prohibitory rather than mandatory).

25             Defendants' citation to *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873 (9th

26   Cir. 2009) does not alter the analysis. Opp. 3.[3] In *Marlyn Nutraceuticals*, the Ninth Circuit considered an

27   ───────────────
     [3] Other cases Defendants cites are also inapposite. Opp. 3 (citing *Garcia v. Google, Inc.*, 786 F.3d 733 (9th
     Cir. 2015) (concluding in a copyright case that plaintiffs sought a "mandatory injunction" because they

28   sought an order that would have "required Google to take affirmative action – to remove (and to keep

                                                    3

injunction in a trademark case that was part mandatory and part prohibitory. 571 F.3d at 878. The mandatory portion of the injunction included an order that defendants "take action," including recalling products from the market and paying restitution to customers. *Id.* But the portion of the injunction that merely stopped defendants from selling infringing products was considered prohibitory. *Id.* at 879.[4] Like an injunction that stops a private party from selling a product in violation of U.S. trademark law, an injunction that stops an agency from implementing a regulation in violation of the APA is prohibitory, not mandatory. *See United Farm Workers v. Perdue*, No. 1:20-cv-01452-DAD-JLT, 2020 WL 6318432, at *16 (E.D. Cal. Oct. 28, 2020) (addressing *Marlyn Nutraceuticals* in an APA case and describing as "prohibitory" an injunction that prevented an agency from "giving effect" to a notice already published in the federal register as immediately effective). Here, the injunction Plaintiffs seek would simply require the agency to "proceed as it would have" if it had not taken unlawful action. *Id.* Plaintiffs' Motion is therefore not subject to the heightened standard Defendants seek to apply.[5]

### B.    Plaintiffs' Showing on the Merits Warrants an Injunction

#### 1.    Defendants' Rulemaking Process Violated the APA

Defendants' cannot overcome Plaintiffs showing that their rulemaking process violated the APA. *Compare* Mot. 3-6 *with* Opp. 4-6. *First*, the Opposition does not rebut any of Plaintiffs' arguments as to why 30 days was an unreasonably short comment period under the circumstances. As Plaintiffs explained, 30 days was insufficient given the complexity and far-reaching implications of the Rule, the pressures of the COVID-19 pandemic, the barrage of rulemaking and policy changes, and the difficulty of assessing the interplay of policy changes effected through Defendants' staggered rulemaking process. Mot. 3-5. In response, the Opposition merely asserts that the 30-day period was "sufficient . . . given that 1,284 comments were received," and that the short comment period did not cause prejudice. Opp. 4. These post-hoc justifications are not a reasoned explanation for Defendants' decision to offer such a

---

removing)" uploaded files); *Heckler v. Lopez*, 463 U.S. 1328, 1333-34 (1983) (characterizing a portion of an injunction as "mandatory" because it "force[d] the [HHS] Secretary to immediately pay benefits").
[4] In *Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017), the court concluded that requiring the government to "conduct future bond hearings consistent with [lawful] constitutional processes" was "prohibitory." Plaintiffs seek a similar "prohibitory" injunction that would merely require immigration courts and the BIA to conduct hearings consistent with lawful regulatory processes.
[5] In all events, the law and facts clearly favor Plaintiffs' position, and the injunction should issue because even if the Court were to construe the remedy Plaintiffs seek as "mandatory in nature" the injunction sought "is a mild one." *Hernandez*, 872 F.3d at 1000.

short comment period in the first place. They are also demonstrably wrong. The quantity of comments received says nothing about the quality of the comments the public was able to prepare in the short timeframe.[6] Numerous commenters explained what topics they could not fully address because of the short comment period.[7] Defendants also ignore Plaintiffs' declarations explaining why they were unable to provide meaningful comments on all the issues important to them during the shortened time period; for example, multiple Plaintiffs stated that they were unable to address the interplay of the rule with other proposals – an issue Defendants sidestepped completely.[8] Defendants' cannot rebut Plaintiffs' showing that the comment period was unreasonably short under the circumstances or show that the error was clearly harmless. *Pangea Legal Servs. v. U.S. Dep't of Homeland Sec.*, No. 20-CV-07721-SI, 2020 WL 6802474, at *22 (N.D. Cal. Nov. 19, 2020) ("*Pangea I*").

*Second*, Defendants ignored Plaintiffs' arguments that their staggered rulemaking both denied the public a meaningful opportunity to comment on the Rule, and also resulted in an arbitrary and capricious failure to consider the interplay of intersecting policy changes outlined in Plaintiffs' motion. Mot 4-5. Nor do Defendants respond to any of the legal authority Plaintiffs cited to show that Defendants' staggered rulemaking resulted in a violation of the APA. *Id.* Defendants' persistent unwillingness to even consider the effects of their staggered rulemaking process confirms that they conducted this rulemaking in a manner that violates the APA. *See, e.g., Casa de Md., Inc. v. Wolf*, Civil Action No. 8:20-cv-02118-PX, 2020 WL 5500165, at *26 (staggered rulemaking prevented the pubic from considering the cumulative impact of the rules); *Immigrant Legal Res. Ctr. v. Wolf*, Case No. 20-cv-05883-JSW, 2020 WL 5798269, at *14 (N.D. Cal. Sept. 29, 2020) (concluding it was arbitrary and capricious for the agency not to consider the combined impact of the rules); *Pangea I*, 2020 WL 6802474,

---

[6] *See, e.g.,* Domestic Violence Orgs. *Amicus* Br. 12 (Jan. 29, 2021), ECF No. 27-1 (illustrating the point by noting only 235 comments address administrative closure and 122 of those responses objected to the short comment period); ILRC Dec.¶ 24, ECF No. 24-3 (explaining that ILRC did not comment on administrative closure because it could not cover all the Rule's topics in the short time frame).
[7] *See, e.g.,* Igra Dec., ECF No. 24-6, Ex. 6 at 2-3 (describing the difficulty of assessing the interplay of multiple rules and a new precedential decision issued by then-Attorney General Barr just 24 hours before the close of the comment period); Ex. 2 at 2 (explaining that AILA did not have time to address a new proposed regulation issued just four days before the close of the comment period); Ex. 7 at 4 (CGRS did not have time to research "potentially relevant international and domestic law sources").
[8] ILRC Dec. ¶¶ 22-24 (comments did not reflect the full range of concerns including concerns about administrative closure); RAICES Dec. ¶ 10, ECF No. 24-5 (RAICES did not have time to "review all of the new proposed rules together and see the interplay"); Tahirih Dec. ¶ 15, ECF No. 24-4 (same); Centro Dec. ¶ 14, ECF No. 24-2 (Centro Legal did not have time to submit a comment at all).

1    at *22; *see also Portland Cement Ass'n v. E.P.A.*, 665 F.3d 177, 187 (D.C. Cir. 2011) (basing a rule on "a

2    premise the agency itself has already planned to disrupt is arbitrary and capricious.").

3        *Third*, Defendants' excuses for failing to satisfy the Regulatory Flexibility Act ("RFA") all fall flat.

4    *Compare* Mot. 6 *with* Opp. 5-6. First, the authorities Defendants cite do not hold that Defendants could

5    ignore their RFA obligations here. *Id.* For example, *Cement Kiln Recycling Coal. v. E.P.A.*, 255 F.3d 855

6    (D.C. Cir. 2001) states that an agency need not assess "the impact on all of the nation's small businesses

7    possibly affected by a rule," *id.* at 869, but it also explains that the RFA certification pertains to small

8    businesses that are "subject to" a regulation. *Id.* Here, small legal service providers including Plaintiff

9    Centro Legal are "subject to" the Rule because they must comply with its requirements including the

10   appellate briefing schedule. They are also plainly within the zone of interest because the statute

11   specifically requires that a list of pro bono providers be offered to those in removal proceedings. Mot. 6.

12   And when the D.C. Circuit revisited *Cement Kiln*, it confirmed that small entities may be "directly

13   affected" by a regulation that does not "immediately address" them. *Aeronautical Repair Station Ass'n, Inc.*

14   *v. F.A.A.*, 494 F.3d 161, 176-78 (D.C. Cir. 2007). That is the situation for small legal service providers in

15   this context; the Rule undoubtedly "affects" them even if it is addressed to individuals in removal

16   proceedings. Finally, Defendants' suggestion that they made a "good faith effort" to comply with the

17   RFA is unavailing. Opp. 5. The "RFA is a procedural statute setting out precise, specific steps an agency

18   must take." *Aeronautical Repair*, 494 F.3d at 178. Defendants cite no authority suggesting that a "good

19   faith effort" satisfies their obligation under the APA to follow procedures of law.

20              **2.      Mr. McHenry Did Not Have Authority to Promulgate the Final Rule**

21       None of Defendants' arguments establish that Director McHenry properly issued the Rule.

22   *Compare* Mot. 7-8 *with* Opp. 7. *First*, Defendants assert that the Attorney General's authority under 28

23   U.S.C. § 510 and 8 U.S.C. § 1103(g)(2) are "overlapping." *Id.* This argument flies in the face of basic

24   principles of statutory construction. "Where there is no clear intention otherwise, a specific statute will

25   not be controlled or nullified by a general one, regardless of the priority of the enactment." *Swinomish*

26   *Indian Tribal Cmty. v. BNSF Ry. Co.*, 951 F.3d 1142, 1159 (9th Cir. 2020) (quoting *Morton v. Mancari*, 417

27   U.S. 535, 550 (1974)) (internal quotation omitted); *see also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1616–

28   17 (2018) ("When confronted with two Acts allegedly touching on the same topic, this Court must strive

'to give effect to both.'") (quoting *Mancari*, 417 U.S. at 551). According to Defendants, the Attorney General's authority under 28 U.S.C. § 510 subsumes his authority under 8 U.S.C. § 1103(g). That cannot be correct because it would render superfluous a key provision of the INA. *See BNSF Ry.*, 951 F.3d at 1159; *see also RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (when general and specific authorization "exist side-by-side," courts avoid rendering the specific superfluous).

*Second*, Defendants attempt to distinguish *N.S. v. Hughes*, Case No. 1:20-CV-101, 2020 WL 4260739 (D.D.C. July 24, 2020), by asserting that the delegation at issue in *N.S.* is different from the delegation of authority at issue here. In particular, Defendants assert that *N.S.*'s reliance on *United States v. Giordano*, 416 U.S. 505 (1974), renders its holding inapplicable to the Order. Opp. 8. But Defendants' narrow focus ignores the principle underlying the *N.S.* court's reasoning. Specifically, 28 U.S.C. §§ 509 and 510 "are not part of the [INA], which is a comprehensive federal statutory scheme for regulation of immigration and naturalization and was intended to be a comprehensive and complete code." *N.S.*, 2020 WL 4260739, at *5 (quoting *Chambers of Comm. of U.S. v. Whiting*, 563 U.S. 583, 582 (2011); *Elkins v. Moreno*, 435 U.S. 647, 666 (1978)) (internal citations and quotation omitted). In context, Congress expressly intended 8 U.S.C. § 1103(g), not 28 U.S.C. § 510, to be the source of EOIR's authority.[9] *See* 6 U.S.C. § 521 ("[EOIR] *shall* be subject to the direction and regulation of the Attorney General under *section 1103(g) of title 8*.") (emphasis added). The Attorney General's dramatic expansion of the Director's authority pursuant to 28 U.S.C. § 510 runs afoul of Congress's choice to "specifically and separately allocate[] enforcement authority over a certain action or set of actions." *N.S.*, 2020 WL 4260739, at *5.

*Third*, Defendants argue that *Securities & Exchange Commission v. Chenery,Corp.*, 318 U.S. 80 (1943) ("*Chenery I*"), does not invalidate the Order because the Order sufficiently references 8 U.S.C. § 1103(g) by using the word "including." Opp. 8–9. That argument is fundamentally inconsistent with the principle established in *Chenery I*. Moreover, the Order's reference to "matters within the jurisdiction of [EOIR]" is not a "clear" reference to 8 U.S.C. § 1103(g)(1)'s completely different language, that "[t]he Attorney General shall have such authorities and functions under this chapter and all other laws relating to the immigration and naturalization of aliens as were exercised by the [EOIR]." *Compare* Greer Dec.

---

[9] Defendants' attempts to distinguish *N.S.* all fundamentally misses the point that the issue in that case was not simply whether the Attorney General could delegate arrest power but whether the Attorney General had properly done so with the delegation at issue.  That is the same question here.

Ex. 1 (Attorney General Order No. 4910-2020), ECF No. 47-2, *with* 8 U.S.C. § 1103(g)(1). Finding the Order's vague reference sufficient here would give Defendants *carte blanche* to provide post-hoc rationalizations for their actions.[10] Because "the Government should take square corners in dealing with the people" "particularly when so much is at stake," Defendants' post-hoc wordsmithing does not pass muster. *Regents*, 140 S. Ct. at 1909 (citation and internal quotation marks omitted).

Finally, Defendants' contention that the Proposed Rule provided commenters with sufficient notice of the delegation misunderstands Plaintiffs' argument. Opp. 9–10. Plaintiffs do not challenge the lack of notice provided to commenters of the *procedure* used by the Attorney General to delegate rulemaking authority. Instead, the Rule prevented Plaintiffs from meaningfully commenting on the *substance* of the delegation: the impropriety of delegating rulemaking authority to the EOIR Director who, in turn, delegated expansive authority to himself. Mot. 8. Although commenters were on notice that the Rule would delegate authority from the Attorney General to the EOIR Director "regarding the efficient disposition of appeals," Opp. 10, they did not have notice of the fact that the Attorney General would (1) be delegating *all* rulemaking authority to the Director, and (2) that the Director *himself* would be issuing the final Rule. For this reason too, Defendants fail to rebut Plaintiffs' Motion.

## C.     Provisions of the Rule Illustrate That It Is Arbitrary and Capricious.

(1) <u>Elimination of *Sua Sponte* Motions to Reopen</u>:  Defendants' Opposition largely repeats the Rule's deficient rationales. First, the Opposition confirms that the purported "abuse" of *sua sponte* authority discussed in the Rule is nothing more than adjudicators' practice of exercising that authority in response to a party's motion. Opp. 12 (citing 85 Fed. Reg. 52,491, 52,504 n.31 (Aug. 26, 2020)). But the agency itself had sanctioned that practice for decades.[11] The agency may choose to label the authority something other than "*sua sponte*" authority, but its semantic concern is not a reasoned basis for

---

[10] *See SEC v. Chenery Corp.*, 332 U.S. 194, 196–97 (1947) ("*Chenery II*"); *see also Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 502 (9th Cir. 2018), *rev'd on other grounds by* 140 S. Ct. 1891 (2020) ("The government is . . . asking the court to defer to agency counsel's post-hoc rationalization, as long as there is some reading of the [order—never mind how strained—that would support it. *Bowman* does not require this incongruous result."); *Chenery II*, 332 U.S. at 196–97 ("It will not do for a court to be compelled to guess at the theory underlying the agency's action;  *nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive*.") (emphasis added).

[11] *See, e.g.*, *Matter of X-G-W-*, 22 I. & N. Dec. 71, 74 (BIA 1998) (inviting *sua sponte* motions); *In re Vasquez-Muniz*, 23 I. & N. Dec. 207, 214 (BIA 2002) (granting government's untimely *sua sponte* motion); *Matter of Renata Miranda-Cordiero*, 27 I. & N. Dec. 551, 555 (BIA 2019) (reviewing substance of immigration judge's denial of *sua sponte* motion).

eliminating the authority altogether. Defendants also claim that a lack of meaningful standards for *sua sponte* reopening leads to inconsistent application. Opp. 12. But immigration law is "replete" with similar discretionary standards that adjudicators routinely apply. Compl. ¶ 186 (Jan. 19, 2021), ECF No. 1. And the agency failed to consider the obvious alternative of adopting clearer standards. Mot. 10.

Second, Defendants do not rebut Plaintiffs' argument that the Rule eliminates *sua sponte* authority in the name of "efficiency" but will actually require the agency and federal courts to make more complex equitable tolling determinations. Mot. 9. They do not even contend that they evaluated this problem.

Third, the "finality" rationale is disingenuous because the Rule exempts DHS from time and number limits altogether. Mot. 9-10. The Opposition downplays this discrepancy by claiming that DHS does not "regularly" file *sua sponte* motions, but that claim has no support in the record. *See* Opp. 13 (citing Rule's bare assertion that DHS does not have a practice of filing "infinite" motions). Defendants also argue that the discrepancy is rooted in the INA, which imposes time and number limits on noncitizens only, but ignore that the INA creates a statutory right to file a motion to reopen *for the noncitizen only* without *any* mention of DHS motions to reopen. Opp. 13; 8 U.S.C. § 1229a(c)(7)(A).

In addition, Defendants' failure to consider the reliance interests associated with their longstanding policy, or alternatives within the ambit of the policy, is fatal to their position. The Rule does not mention noncitizens who have spent months or years pursuing vacaturs or pardons in reliance on the possibility of *sua sponte* reopening, or of organizations like Plaintiff ILRC that have invested deeply in post-conviction relief advocacy.[12] The Opposition argues that Defendants were not required to assess reliance interests because *sua sponte* reopening is discretionary. Opp. 15 n.8. But the Supreme Court rejected that argument in holding that DHS was required to assess reliance interests before terminating Deferred Action for Childhood Arrivals—a quintessentially discretionary program created by a memorandum that purported to confer no substantive rights. *Regents*, 140 S. Ct. at 1913. Defendants did not conduct that assessment here. Nor did they consider alternatives to elimination of *sua sponte* authority, as required when departing from longstanding practice; the Opposition has no

---

[12] *See, e.g.*, Public Defender *Amicus* Br. ("PD Amicus") at 2, 6 (Jan. 30, 2021), ECF 36-1 (discussing lengthy process to obtain vacatur or pardon); *id.* at 9-10 (describing clients with decades-old removal orders who remained in the U.S. because ICE could not carry out removal); ILRC Dec. ¶¶ 13-20, 32-37.

1    response to this point. *See id.* (holding that DHS Secretary's failure to consider alternatives "alone

2    render[ed] [her] decision arbitrary and capricious").

3          Finally, the discretionary nature of *sua sponte* reopening does not give the agency license to

4    eliminate it retroactively. *See* Opp. 14-15. In *Immigration & National Services v. St. Cyr*, 533 U.S. 289 (2001),

5    the Supreme Court held that it would be impermissibly retroactive to apply a statute repealing a form of

6    discretionary relief to noncitizens who had accepted plea agreements before the statute's effective date.

7    533 U.S. at 321-25. The "discretionary" nature of the relief did not alter the conclusion because "there is

8    a clear difference . . . between facing possible deportation and facing certain deportation." *Id.* at 325. For

9    noncitizens who sought *sua sponte* reopening before the effective date, the Rule transforms possible

10   deportation into certain deportation and is thus impermissibly retroactive It also results in a diversion of

11   Plaintiffs' resources. Centro Dec. ¶ 26. While noncitizens do not have a right *sua sponte* reopening, the

12   Rule "takes away or impairs" their "vested right[]" under prior regulations to *request* reopening. 533 U.S.

13   at 321 (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269 (1994)) (internal quotation omitted).

14         (2) <u>Elimination of Administrative Closure</u>: Defendants' arguments with respect to the effective

15   elimination of administrative closure echo the deficient reasoning in the Rule itself. *See* Opp. 15-20. *First*,

16   Defendants attempt to downplay the effect of the Rule by stating that administrative closure "remains

17   available" in certain situations. *See* Opp. 16-19. But the Rule fails to acknowledge or quantify that it only

18   retains administrative closure for an extraordinarily limited subset of noncitizens, even though

19   commenters warned that the Rule effectively eliminates administrative closure for the vast majority of

20   noncitizens in removal proceedings.[13] This will lead to the deportation of survivors of violence,

21   abandoned children, and others for whom Congress specifically crafted relief. Domestic Violence Orgs.

22   *Amicus* Br. 13-14, 20-22; Kids in Need of Defense *Amicus* Br. 4-8 (Jan. 29, 2021), ECF No. 29-2. By

23   doubling down on the Rule's refusal to admit that it will deprive many noncitizens of the ability to

24   receive statutory benefits to which they are entitled, the Opposition confirms that Defendants failed to

25   consider this critical aspect of the problem.

26         Defendants contend that the Rule's elimination of administrative closure helps delineate the

27   separation of EOIR from the function of the DHS prosecutor. Opp. 16. But an immigration judge's

28   ---
     [13] Igra Dec. Ex. 3 at 7; Ex. 13 at 2.

1   decision to administratively close proceedings does not disturb DHS's power to commence proceedings.

2   *See Matter of G-N-C-*, 22 I&N Dec. 281, 283-84 (BIA 1998); *see also Matter of W-Y-U-*, 27 I & N Dec. 17,

3   19 (BIA 2017). Administrative closure is not "functionally equivalent to the exercise of prosecutorial

4   discretion." Opp. 16 n.9. Like all procedural mechanisms used by adjudicatory bodies, including

5   continuances and abeyances, administrative closure is governed by standards, and, absent agreement by

6   both sides, is only granted when those standards are met. *See Matter of Avetisyan*, 25 I & N Dec. 688, 696

7   (BIA 2012); Former Immigr. Judges *Amicus* Br. 15 (Feb. 1, 2021), ECF No. 43 (explaining that

8   administrative closure is "essentially a stay of proceedings" whose duration is "set by the completion of

9   a process separate and apart from removal proceedings."). Although Defendants assert that

10  administrative closure "has at times been used to effectively terminate cases through indefinite delay,"

11  Opp. 16 n.9 (quoting 85 Fed. Reg. at 81,599), they do not support that assertion with evidence. Nor do

12  they respond to the well-documented importance of administrative closure.[14] *See* Compl. ¶¶ 133-57;

13  Mot. 10-13; Igra Dec. Ex. 3 at 7-9; Ex. 14 at 12-14; RAICES Dec. ¶¶ 51-64.[15]

14      Next, Defendants argue that the Rule adds "clarity to an unsettled area of law," Opp. 17,[16] but

15  clarity does not require the effective elimination of administrative closure and Defendants do not offer a

16  reasoned explanation for rejecting alternatives. *See* Mot. 11. Instead, Defendants assert that the Rule

17  increases efficiency but that assertion ignores evidence that administratively closing cases improves

18  EOIR's processes and allows "judges to focus on other cases before their court without having to

19  repeatedly recalendar inactive proceedings." ECF No. 43 at 15; ECF No. 27-1 at § IV; Booz Allen

20  Report 26 (Apr. 6, 2017), https://bit.ly/35td6yo; Igra Dec. Ex. 9 at 29.

21      Finally, Defendants assert that the Rule "does not nullify any part of the regulation governing

22  ---

[14] Defendants assert that Plaintiffs' allegations as to reliance interests are "misplaced," by simply citing to
23  the statement in the Federal Register that the elimination of administrative closure "applies, in general,
    only prospectively." Opp. 18 (quoting 85 Fed. Reg. at 81,645). This statement ignores the concrete and
24  irreparable harm to Plaintiffs, including when cases that have already been administratively closed are re-
    calendared. *See, e.g.,* Tahirih Dec. ¶¶ 38-39; RAICES Dec. ¶¶ 55-62.
25  [15] Defendants' argument that the change does not violate due process misses the point. *See* Opp. 16.
    Although there may be due process implications, Plaintiffs' Motion need not establish that the
26  elimination of administrative closure standing alone violates due process to support their Motion.
    Defendants acted arbitrarily and capriciously by failing to give serious consideration to the impact of the
27  Rule's virtual elimination of administrative closure.
    [16] The Department also fails to acknowledge that the uncertainty it discusses is the result of *Castro-Tum*
28  which sought to upend a uniform rule that existed under *Matter of Avetisyan* since 2012. Igra Ex. 6, at 6-7.

the provisional waiver because administrative closure is still available in certain instances." Opp. 19. This assertion is both misleading and unavailing. As Defendants acknowledge, provisional waivers are relevant only for individuals who must depart the United States and seek a visa at a consulate to secure permanent resident status. 8 C.F.R. § 212.7(e). And yet, under the Rule, all of the individuals for whom administrative closure remains available are eligible for adjustment of status—a process for obtaining permanent residence that does not involve departing the United States and thus does not involve consular processing. *See* Opp. 16, 19. Because the Rule has the practical effect of eliminating the provisional waiver program *for those who would actually use it*, the Rule nullifies the provisional waiver regulations without adequate consideration of the interests at stake.

Defendants' further assertion that an individual may take advantage of the provisional waiver program even after a final order of removal has been entered ignores that this is legally impossible where ICE executes that removal order. 8 C.F.R. § 212.7(e)(3) (providing that an individual must be in the United States to apply for the provisional waiver). And Defendants' claim that those who are forced to seek a waiver from outside the United States "may obtain the same substantive benefit as the provisional waiver," Opp. 19, overlooks the core benefit and express purpose of the provisional waiver: to shorten the time an applicant must be separated from their family in the United States. *See* 78 Fed. Reg. 536, 565 (Jan. 3, 2013); 81 Fed. Reg. 50,244, 50,271 (July 29, 2016).

Defendants ultimately defend their failure to adequately consider the effect of the Rule on the provisional waiver scheme by noting that the provisional waiver regulations were promulgated by DHS and suggest DHS can change those regulations in order to align with the Rule. Opp. 19-20. They claim that the Rule's effect on existing DHS regulations is "outside the scope of this rule." Opp. 20. But Defendants cannot simply wash their hands of current law. Existing "regulations create a right to seek the provisional waiver," *Calderon v. Sessions*, 330 F. Supp. 3d 944, 957-58 (S.D.N.Y. 2018) (citation and internal quotations omitted) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)), and the Rule's elimination of that right without adequate consideration constitutes arbitrary and capricious agency action.

(3) Compressed Briefing Schedule: Although Defendants assert that the changes to the BIA briefing schedule are reasonable, they fail to consider important aspects of the problem in violation of

the APA. Defendants acknowledge that the Rule reduces the maximum allowable time for a briefing extension from 90 to 14 days, but they insist that this will not lead to less effective representation because, according to Defendants, there is no reason for a noncitizen to wait until obtaining a briefing schedule before retaining representation. Opp. 20. But Plaintiffs, commenters, and *amici* all explained why this is extremely difficult; the BIA mails a written order explaining the reasons for the immigration judge's decision and the transcript at the same time as the briefing schedule.[17] Without access to the immigration judge's decision and the transcript, prospective counsel cannot evaluate a case, nor can counsel draft a meaningful appellate brief.

Likewise, Defendants acknowledge that parties submitting a brief by mail will often do so "several days in advance of the deadline to ensure that it is timely received," Opp. 21, but Defendants dismiss comments explaining that extensions are often necessitated by such mail delays. Ignoring current conditions, Defendants cling to an expectation that "registered attorneys"[18] will be able to access electronic records of proceeding "in early 2021." Opp. 21.[19] That an electronic system may be available at some point in the future is no answer to Plaintiffs' current and immediate harms.

Delays in adjudication at the BIA are not attributable to the time spent briefing.[20] Defendants' response does not address that the Rule itself asserts that briefs are not even filed in the majority of BIA cases. Mot. 14, n. 35. Instead, Defendants assert that other changes in the Rule will ensure the timely adjudication of appeals. Opp. 21-22. Although the Rule purports to impose deadlines for adjudication, Defendants ignore that compliance with the deadlines will be impossible to achieve as a practical matter. As commenters pointed out, "there were over 70,000 cases pending before the BIA at the end of FY 2019, and that for a 23-member BIA, each BIA member would have to complete 3,043 cases per year to comply with the 335-day deadline." 85 Fed. Reg. at 81,620. Indeed, the Rule will only increase the backlog because it imposes a new individualized "good cause" analysis for all BIA extension requests.

---

[17] *See, e.g.*, ECF No. 43 at 5-6; Igra Dec. Ex. 9 at 6-9 (CLINIC, a founding partner of the BIA Pro Bono Project referenced in Defendants' Opposition, describing that the Rule misunderstands "realities of immigration law practice" that necessitate extensions for BIA briefing); RAICES Dec. ¶¶ 21-30.

[18] Defendants' reliance on the availability of EOIR Courts & Appeals System (ECAS) for registered attorneys undermines their earlier suggestion that the RFA does not apply to the Rule.

[19] Defendants fail to note that the ECAS is not available in many locations, including San Francisco, Los Angeles, Chicago, or New York, and is "being deployed in stages." https://www.justice.gov/eoir/ECAS

[20] RAICES Dec. ¶ 38; Centro Dec. ¶ 17; Igra Dec. Ex. 3 at 24.

1    Before the Rule, the BIA as a matter of course granted parties a one-time 21-day extension upon

2    request. Defendants assert that they are in a better position to find that the inefficiency of extensions

3    outweighed any additional time to evaluate good cause, Opp. 22, but their position defies logic. Using

4    resources to evaluate "good cause" for extensions leaves fewer resources for adjudicating appeals.[21]

5         Finally, both the Rule and Defendants' response ignore the interplay of this aspect of the Rule

6    with other recent changes. Mot. 14. In particular, nowhere in the response do Defendants even mention

7    *Matter of A-C-A-A-*, 28 I. & N. Dec. 84 (A.G. 2020). That decision—which came out approximately 24

8    hours before the comment period closed on the Rule—will make BIA briefing more complicated,

9    thereby making the shortened BIA briefing schedule even more problematic.[22]

10   **III.    Plaintiffs Have Established Irreparable Harm and That the Equities Tip in Their Favor**

11        Plaintiffs established irreparable harm because the Rule frustrates their missions and causes a

12   diversion of their resources. Mot. 14-15; *Cf.* Opp. 22. Defendants suggest that Plaintiffs' concerns about

13   funding are speculative, *id.*, but do not dispute Plaintiffs' evidence detailing how the Rule harms them in

14   ways the Ninth Circuit has found sufficient to support an injunction. *EBSC III*, 950 F.3d at 1280. Here,

15   Plaintiffs' allegations of harm are based on their extensive knowledge and experience with the delivery

16   of immigration legal services. *See CLINIC*, 2021 WL 184359 at *12. And Defendants' suggestion that

17   there was an "unexplained delay" in filing suit ignores the substantial evidence Plaintiffs presented about

18   how Defendants' barrage of rulemaking crippled their operations, and compelled them to prioritize

19   delivering legal services before the effective dates of the various rules.[23]

20        In assessing the public interest, Defendants do not address the harm to the public as articulated

21   by numerous commenters and *amici*, including cities and states. *See, e.g.,* Mot. 15; 28 Cites & Counties

22   *Amicus* Br. (Jan. 29, 2021), ECF No. 32; ECF No. 27-1 at § II;. Instead, Defendants argue that the Rule

23   will result in more efficient allocation of resources and that an injunction would require the Defendants

24   to expend resources unwinding the Rule. Plaintiffs contest that the Rule will enhance efficiency.[24] And

25   Defendants offer no evidence of how their operations will be seriously disrupted by returning to a set of

26

27   [21] ECF No. 43 at 5; Igra Dec. Ex. 13 at 9.
     [22] Igra Dec. Ex. 6 at 2-3.
     [23] Centro Dec. ¶¶ 13-15; ILRC Dec. ¶¶ 22-25, 29-30; RAICES Dec. ¶¶ 11-16; Tahirih Dec. ¶ 16.

28   [24] *See e.g.*, RAICES Dec. ¶¶ 18, 46, 51-58, 61, 63; Igra Dec. Ex. 3 at 8-10, 18-19, 23-25.

procedures that was stable for years or decades. Moreover, Defendants do not address that President Biden has expressly instructed the Secretary of State, the Attorney General, and the Secretary of Homeland Security to review "agency actions" that may be a barrier to the fair adjudication of immigration benefits.[25]

## IV.   The Scope of Relief Plaintiffs Request is Warranted

A nationwide injunction that blocks the entire rule is warranted. "In immigration matters," the Ninth Circuit has "consistently recognized the authority of district courts to enjoin unlawful policies on a universal basis." *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018). Moreover, Plaintiffs assert challenges to the validity of the entire Rule and not just discrete provisions. In particular, the procedural and substantive violations of the APA pervade the entire Rule, and the appropriate remedy for such APA violations is to set the Rule aside. *EBSC III*, 950 F.3d at 1283. Indeed, "Defendants' proposition that the Rule be suspended only as to plaintiffs and their 'bona fide clients' borders on absurd." *Pangea I*, 2020 WL 6802474, at *28. It would "create a bizarre and confusing multi-tiered immigration law system" and "would likely mean that plaintiffs would be inundated" with requests for assistance, "thereby creating an entirely new set of resource problems for plaintiffs." *Id.* Because Plaintiffs provide mentoring and support to other practitioners, limiting relief to their clients would not afford complete relief. *Id.*; ILRC Dec. ¶¶ 4-10; Centro Dec. ¶¶ 8-10.

Respectfully submitted,

DATE:  February 12, 2021                    */s/ Naomi Igra*

Jingni (Jenny) Zhao (SBN 284684)            Scott T. Nonaka (SBN 224770)
jennyz@advancingjustice-alc.org             snonaka@sidley.com
Glenn Michael Katon (SBN 281841)            Irene Yang (SBN 245464)
glennk@advancingjustice-alc.org             irene.yang@sidley.com
Anoop Prasad (SBN 250681)                   Naomi A. Igra (SBN 269095)
anoopp@advancingjustice-alc.org             naomi.igra@sidley.com
ASIAN AMERICANS ADVANCING JUSTICE           Stephen Chang (SBN 312580)
– ASIAN LAW CAUCUS                          stephen.chang@sidley.com
55 Columbus Avenue                          SIDLEY AUSTIN LLP
San Francisco, CA 94111                     555 California Street, Suite 2000

---

[25] *See* Dec. of Naomi A. Igra. In Support of Reply Ex. A. Defendants have indicated that they have not yet made a determination about whether the Rule here falls under the Executive Order, and do not know when the determination will be made. Igra Reply Dec. ¶¶ 5-8.

Phone: (415) 848-7710
Fax: (415) 896-1702

Judah Lakin (SBN 307740)
judah@lakinwille.com
Amalia Wille (SBN 293342)
amalia@lakinwille.com
LAKIN & WILLE LLP
1939 Harrison Street, Suite 420
Oakland, CA 94612
Phone: (510) 379-9216
Fax: (510) 379-9219

San Francisco, CA 94104
Phone: (415) 772-1200
Fax: (415) 772-7400

Seferina Berch (*pro hac vice*)
sberch@sidley.com
Michael McGuinness (*pro hac vice*)
mmcguinness@sidley.com
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Phone: (212) 839-5300
Fax: (212) 839 5599

*Attorneys for Plaintiffs*